THE STATE OF OHIO, APPELLEE, *v.* GOODWIN, APPELLANT.

[Cite as *State v. Goodwin* (1999), 84 Ohio St.3d 331.]

(No. 97–1187—Submitted June 9, 1998—Decided January 20, 1999.)

*George J. Sadd* and *Arthur A. Elkins,* Cuyahoga County Assistant Prosecuting Attorneys, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Stephen A. Ferrell* and *J. Joseph Bodine, Jr.,* Assistant Public Defenders, for appellant.

---

ALICE ROBIE RESNICK, J.  Goodwin has raised fifteen propositions of law for our consideration.  We have independently reviewed the record, weighed the aggravating circumstance against the mitigating factors, and examined the proportionality of the sentence of death imposed in this case.  For the reasons that follow, we affirm Goodwin's convictions for aggravated felony-murder, aggravated murder with prior calculation and design, aggravated robbery, and possession of a firearm while under disability.  We further affirm his sentencing, including the sentence of death.

I

### Ineffective Assistance of Counsel

In his first, third, and sixth propositions of law, Goodwin asserts that his counsel at trial were ineffective.  To prevail on a claim of ineffective assistance of counsel, a defendant must show, first, that "counsel's performance was deficient" and, second, that "the deficient performance prejudiced the defense.  * * * [C]ounsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.  A Sixth Amendment violation does not occur "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."  *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, 380.  To establish prejudice, a defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different."  *Id.* at paragraph three of the syllabus.

In his sixth proposition of law, Goodwin contends that counsel were ineffective for failing to adequately question jurors about their views on mitigating factors or on the death penalty.  During *voir dire,* counsel asked no questions of nine jurors to determine their death penalty views.

We have determined previously that failure to inquire about various mitigating factors during voir dire does not constitute ineffective assistance of counsel. *State v. Goff* (1998), 82 Ohio St.3d 123, 140, 694 N.E.2d 916, 929. Asking jurors their views on mitigation is "not essential to competent representation." *State v. Phillips* (1995), 74 Ohio St.3d 72, 86, 656 N.E.2d 643, 659. Additionally, there is no requirement that counsel must individually question each juror about his or her views on the death penalty. *State v. Evans* (1992), 63 Ohio St.3d 231, 247, 586 N.E.2d 1042, 1056.

A review of the record indicates that defense counsel exercised their discretionary judgment. Counsel engaged in questioning of several prospective jurors when those jurors expressed some reservations about the death penalty. Counsel also sought to rehabilitate jurors through questioning. The decisions by counsel not to question jurors further was merely an exercise of their discretionary judgment. "[T]rial counsel stands in the better position to determine which members of the venire merit in-depth examination." *State v. Phillips* at 86, 656 N.E.2d at 659. As such, the conduct of voir dire by defense counsel fell within their range of professional judgment. There is nothing that indicates either deficient performance by counsel or prejudice to the defendant. Accordingly, Goodwin has not demonstrated that his counsel were ineffective in their representation during voir dire. Therefore, we conclude that his sixth proposition of law has no merit.

In his first proposition of law, Goodwin asserts that his defense counsel were ineffective during the penalty phase of the trial. Specifically, Goodwin claims that his attorneys failed to ask for a psychological evaluation, did not argue age as a mitigating factor, and failed to present any evidence at the mitigation hearing.

We reject Goodwin's contention that counsel were ineffective for failing to ask for a psychological evaluation. Nothing in the record establishes that a psychological evaluation would have led to credible, mitigating evidence. Defense counsel told the jury that "there is nothing psychiatrically wrong" with Goodwin. Accordingly, counsel's decision not to request a psychological evaluation was in all respects reasonable.

We also conclude that counsel's strategy during the penalty phase was objectively reasonable, and, therefore, Goodwin's complaints about the paucity of mitigation evidence presented and counsel's failure to argue age as a mitigating factor are meritless. The trial court instructed the jury to consider Goodwin's age as a mitigating factor. In view of such an instruction, there can be no reasonable probability that had counsel argued age as a mitigating factor, the outcome of the trial would have been different.

Further, counsel made a deliberate, tactical choice to limit arguments presented in mitigation and instead adopted a strategy of attempting to create a reasonable doubt as to whether Goodwin was the actual killer. Defense counsel stated, on the record, that he wanted to avoid the risk of permitting the state to present evidence that the defendant had committed five prior aggravated robberies. Counsel felt that given that risk, a strategy of presenting evidence of Goodwin's character, potential for rehabilitation, or other evidence was not the best course of action to pursue in trying to spare his client a sentence of death. Rather, counsel chose to rely upon the disparity of sentences received by the three robbers, and upon reasonable doubt (couched in terms of "residual doubt") as to whether Goodwin was the shooter. Although we have since determined that residual doubt is not to be considered in mitigation, *State v. McGuire* (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112, at the time of this trial, the strategy employed by counsel was objectively reasonable. Moreover, the trial court did not discuss residual doubt in its opinion, but found that the evidence established that Goodwin was the shooter beyond a reasonable doubt. There was no evidence supporting residual doubt, and therefore ineffective assistance of counsel could not be based on this theory.

The choices available to counsel were limited, but counsel's performance did not constitute ineffective assistance of counsel. "Failure to present mitigating evidence * * * does not in itself constitute proof of ineffective assistance of counsel." *State v. Hamblin* (1988), 37 Ohio St.3d 153, 157, 524 N.E.2d 476, 480; see, also, *State v. Post* (1987), 32 Ohio St.3d 380, 388, 513 N.E.2d 754, 763. Accordingly, we conclude that Goodwin's first proposition of law has no merit.

The third proposition of law presents a more difficult assertion of ineffective assistance. Goodwin asserts that counsel conceded guilt during the trial phase, thereby rendering their representation of Goodwin ineffective. During his opening statement, defense counsel for Goodwin stated to the jury:

"You shouldn't let him go, and * * * [after] we get into it, and you've heard the evidence, I'm going to suggest * * * that you should and you ought to * * *, *let's go a little bit stronger than that, say that you must find him guilty.*" (Emphasis added.)

Counsel reiterated this view in closing argument, stating:

"If it were not for the law of aiding and abetting, * * * then I would argue vehemently to you that while he was a robber, he was not a killer. For the purposes of today's verdict, it doesn't make any difference. All three of these men *are guilty of all charges in the indictment.*" (Emphasis added.)

Concessions of guilt, in any form, are among the most troublesome actions a defense counsel can make during representation of a defendant. Notwithstanding our concern over such an action, claims of concession of guilt, like any action

by counsel that a defendant later asserts to constitute ineffective assistance, must be reviewed under the test established in *Strickland* and the subsequent case law. .

Statements of guilt must be first tested under the first prong of *Strickland* to determine whether such a statement constitutes deficient representation. If such a statement may be considered deficient, then it must be determined whether the statement is so prejudicial that a reasonable probability exists that were it not for such a statement, the result of the trial would have been different. In *Clozza v. Murray* (C.A.4, 1990), 913 F.2d 1092, the court, in analyzing an ineffective-assistance claim based on a concession of guilt by counsel, determined that "[t]here is a distinction which can and must be drawn between a statement or remark which amounts to a tactical retreat and one which has been called a complete surrender." *Clozza*, 913 F.2d at 1099. We agree with this approach and consider it instructive in determining whether counsel's statements in this case violated the Sixth Amendment.

Courts, in capital cases, are divided on the question of whether a concession of guilt by defense counsel constitutes ineffective assistance. In *Francis v. Spraggins* (C.A.11, 1983), 720 F.2d 1190, the Eleventh Circuit determined that counsel's representation constituted ineffective assistance. In *Francis*, defense counsel conceded guilt in his closing argument by stating, "I think he committed the crime of murder." *Id.* at 1194. In *Young v. Zant* (C.A.11, 1983), 677 F.2d 792, 799, counsel's representation was determined to be ineffective where counsel, acting out of a mistaken understanding of the bifurcated nature of death penalty proceedings, conceded guilt.

However, in *Clozza*, the court held that no ineffective assistance occurred where trial counsel stated that he, himself, would "probably want to kill" Clozza, the defendant, as a result of his alleged crimes, and that had Clozza's attempt at suicide been successful, "it would not have been the greatest tragedy." *Clozza*, 913 F.2d at 1098. The court determined that despite those comments, the overwhelming case against Clozza, which included a confession, physical evidence, and a lack of evidence to support any defense, required his counsel to adopt a trial strategy that would preserve credibility between himself and the jury. *Clozza*, 913 F.2d at 1099–1100. The court concluded that Clozza's attorney did the best he could do under the circumstances and stated that "[t]o reasonably expect his attorney to extricate Clozza from this dilemma is simply not realistic." *Id.* at 1100.

Similar conclusions were made in *Messer v. Kemp* (C.A.11, 1985), 760 F.2d 1080, and *Bell v. Evatt* (C.A.4, 1995), 72 F.3d 421, where the evidence against each defendant was overwhelming. In *Messer*, defense counsel stated that he would not contest the evidence against his client, and in *Bell*, counsel conceded guilt on a key charge of kidnapping in a case where the murder resulted after an

abduction. *Messer*, 760 F.2d at 1089, and *Bell*, 72 F.3d at 428. See, also, *Smith v. Dixon* (E.D.N.C.1991), 766 F.Supp. 1370, 1392, reversed on other grounds (1994), 14 F.3d 956.

Concessions of guilt by defense counsel must be considered on a case-by-case basis. All of the facts, circumstances, and evidence must be considered. When examined within the context of the entire record of the trial proceedings, we conclude that the statements of guilt made by Goodwin's defense counsel were neither deficient nor prejudicial. The statements made did not constitute an abandonment of defense of Goodwin. Rather, counsel's statements appear to have been made to concede Goodwin's participation in the robbery, and to preserve the credibility of the only plausible defense theory, given the strong evidence against Goodwin—that despite Goodwin's participation in the robbery, he did not kill Mustafa.

An examination of counsel's other actions is demonstrative of this strategy. During the trial phase, defense counsel fought vigorously to suggest that his client was not the perpetrator of the murder. He proficiently cross-examined both Johnson and Padgett in an effort to reflect doubt on the prosecution's premise that Goodwin committed the murder. Counsel attempted to cast doubt on the testimony of both Johnson and Padgett in light of the plea bargain each had received, and since one of them also had a gun at the scene. Counsel also cross-examined Almohannad to show that he did not know who shot Mustafa and that either Johnson or Padgett had possibly committed the crime. These actions represent a "coherent and consistent defense theory." See *State v. Ballew* (1996), 76 Ohio St.3d 244, 256, 667 N.E.2d 369, 381.

Therefore, we cannot square the facts of this case with those where ineffective assistance has occurred. In *Young v. Zant*, the court concluded that the defendant had not received "even a modicum of professional assistance at any time." *Id.*, 677 F.2d at 795. We cannot draw a similar conclusion here. Accordingly, we conclude that the first prong of the *Strickland* analysis has not been met.

We further conclude that even assuming, *arguendo*, that counsel's statements would constitute deficient representation, the requirement of prejudice has not been satisfied. The evidence against Goodwin was overwhelming. The testimony presented by the state included, as was the case in *Clozza*, a confession, strong physical evidence against the defendant, and a lack of evidence presented by the defense. Goodwin told police he shot Mustafa. The only gun observed at the crime scene that could have inflicted the fatal wound belonged to Goodwin, and testimony indicated that it was Goodwin who had the gun in his possession upon entering the market. Additionally, Goodwin made sure his clothes were burned following the robbery.

Under these circumstances, counsel's statements made no practical difference in the result of the trial. Accordingly, prejudice has not been demonstrated. We conclude that the statements made by counsel may be construed as tactical in light of the overwhelming evidence against Goodwin and the limited defense strategies available to counsel. Such statements do not constitute a " 'complete concession of the defendant's guilt,' " such that defense counsel has effectively surrendered his or her case. See *Clozza*, 913 F.2d at 1099. Rather, there appears to be an effort to enhance credibility with the jury by being candidly realistic. We find that a statement by defense counsel regarding the guilt of a defendant that does not represent abandonment of the defense, and therefore may be construed as tactical or strategic, does not constitute ineffective assistance of counsel. The third proposition of law asserted by Goodwin lacks merit.

## II

### Prosecutorial Misconduct

In his fourth proposition of law, Goodwin alleges three instances of prosecutorial misconduct: (1) repeated references by the prosecutor to the good character of the victim, (2) references to the effect of Goodwin's alleged act on the family of the victim, (3) improper bolstering of the credibility of Padgett, and (4) references by the prosecutor to matters allegedly within his own personal knowledge.

The test for prosecutorial misconduct is whether remarks were improper and, if so, whether the rights of the accused were materially prejudiced. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. Because defense counsel did not object to these alleged instances of misconduct, Goodwin has waived all but plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925.

We find no prosecutorial misconduct concerning the state's references to the good character of the victim. The alleged improprieties are nothing more than statements characterizing Mustafa as an innocent victim, a reasonable portrayal based on the record. We reject this allegation of misconduct.

We also find no plain error in the references by the prosecution to the effect of the alleged act on the family of the victim. Merely mentioning the personal situation of the victim's family, without more, does not constitute misconduct. See *State v. Combs* (1991), 62 Ohio St.3d 278, 282–283, 581 N.E.2d 1071, 1076–1077.

Further, we find no plain error in the assertion that the prosecution improperly bolstered the credibility of Padgett by mentioning that he had agreed to tell the truth as a part of his plea agreement. The plea agreements were in evidence, and the prosecutor was entitled to respond to comments made by the defense

about the agreements. See *State v. Rogers* (1986), 28 Ohio St.3d 427, 28 OBR 480, 504 N.E.2d 52; and *State v. Tyler* (1990), 50 Ohio St.3d 24, 41, 553 N.E.2d 576, 595–596. Nor do we find any plain error as to the remainder of the prosecutor's remarks in the record. "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence." *State v. Smith* (1997), 80 Ohio St.3d 89, 111, 684 N.E.2d 668, 689.

The fourth proposition of law asserted by Goodwin has no merit.

## III

### Incomplete Record

In proposition of law five, Goodwin asserts that the trial transcript is inadequate for appellate review because of eight unrecorded pretrials and twenty-seven unrecorded bench conferences. We held in *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685, syllabus, that "[t]he requirement of a complete, full, and unabridged transcript in capital trials does not mean that the trial record must be perfect for purposes of appellate review." In *Palmer*, we determined that reversal will not occur because of unrecorded pretrials or sidebars where the defendant has failed to demonstrate that a request was made at trial or objections were made, that an effort under App.R. 9 was made to reconstruct what occurred, and that material prejudice resulted. *Id.* at 554, 687 N.E.2d at 696.

Goodwin has not met those requirements. Goodwin did not make a pretrial motion to record all sidebars, nor does the record show that counsel for Goodwin requested that all pretrial or bench conferences be recorded. In the absence of such a request, any possible error is waived. See *State v. Grant* (1993), 67 Ohio St.3d 465, 481, 620 N.E.2d 50, 68.

Appellate counsel for Goodwin did ask the trial court for such a hearing. However, Goodwin has made no showing of prejudice. "Prejudice will not be presumed from the mere existence of * * * unrecorded bench and chambers conferences * * *." *Palmer*, 80 Ohio St.3d at 554, 687 N.E.2d at 697.

Goodwin additionally complains that the record does not reflect trial court rulings on pretrial motions, but the trial docket reflects some entries, and, according to the court of appeals, the trial court additionally stated that "[a]ll motions on the defense requested rulings received same and were made part of the record in open court prior to trial." Further, Goodwin's claims concerning the jury instructions have no merit. The instructions are transcribed, and Goodwin makes no claim that the transcript is inadequate.

Accordingly, we conclude that the record is adequate for appellate review. Proposition of law five is meritless.

## IV

## Voir Dire

In proposition of law seven, Goodwin asserts that trial counsel were ineffective in allowing biased jurors to be seated and that the trial court improperly allowed the state to exercise peremptory challenges on jurors who had reservations about the death penalty. We disagree.

Goodwin's claim about the use of peremptory challenges by the prosecution is without merit. By failing to request the state's explanation for the dismissals, Goodwin waived the issue. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 485, 653 N.E.2d 304, 317. Further, except for exclusions based on race or gender, the discretion of a prosecutor to exercise peremptory challenges is broad. *Ballew,* 76 Ohio St.3d at 253, 667 N.E.2d at 378–379. See, also, *State v. Cook* (1992), 65 Ohio St.3d 516, 518, 605 N.E.2d 70, 77.

Goodwin also asserts that the prosecutor made prejudicial remarks during voir dire by stating that, "for the purposes of my next question, we're assuming that the State * * * proves that [Goodwin] committed the crimes[,]" or "assuming that [Goodwin's] been found guilty[.]" These questions were neither misleading nor prejudicial. The questions were properly qualified by the prosecutor and were reasonably necessary to determine the ability of the jurors to serve on a panel that might consider the death penalty.

Finally, trial counsel for Goodwin were not ineffective in failing to dismiss jurors Teisler and Schwartz. Teisler indicated an aversion to blood, but stated that she could review evidence of the crime scene. Thus, there was no potentially prejudicial effect of Teisler's being seated. Counsel were not ineffective in determining that she was competent to serve. Nor were trial counsel ineffective for failing to exercise a peremptory challenge on juror Schwartz. Schwartz was dissatisfied that a man who had been convicted of a crime against his family had not been incarcerated longer, but stated that it would have no adverse effect on his ability to serve. There was no prejudice by this juror's inclusion on the jury. Schwartz stated that he would follow the law. Although he indicated some positive stance towards the death penalty, we cannot conclude that counsel's failure to dismiss him amounted to ineffective assistance of counsel. Decisions on the exercise of peremptory challenges are a part of trial strategy, and counsel's decisions here do not meet either part of the *Strickland* analysis. Schwartz indicated that he could be fair, and counsel accepted this representation. The record does not support a conclusion that counsel's failure to exercise a peremptory challenge constituted ineffective assistance.

For those foregoing reasons, proposition of law seven has no merit.

## V

### Prejudicial Photographs

Goodwin alleges in proposition of law eight that photographs introduced at trial were so prejudicial as to deprive him of his constitutional rights. We disagree.

Nonrepetitive photographs, even if gruesome, are admissible if relevant and are of probative value as long as the probative value of each photograph outweighs the danger of material prejudice to the accused. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus; *State v. Morales* (1987), 32 Ohio St.3d 252, 257, 513 N.E.2d 267, 273. Decisions on admissibility are within the discretion of the trial court. *Slagle,* 65 Ohio St.3d at 601, 605 N.E.2d at 923.

Here, a careful review of the record indicates that the trial judge considered the photographs, admitting three autopsy photographs and five crime-scene photos that can be characterized as gruesome. Other photographs were excluded by the trial judge. The autopsy photographs illustrate the location and nature of the wound and corroborate the testimony of the coroner. These photographs are not repetitive. The probative value of these photographs is evident, as an illustration of where a bullet enters the body and evidence of the resulting wound are probative of a purposeful killing. *Maurer,* 15 Ohio St.3d at 265, 15 OBR at 401–402, 473 N.E.2d at 792.

The crime scene photographs corroborate the testimony of the detectives, and are probative as evidence of a purposeful killing. In addition, the photographs demonstrate the massive quantity of blood involved, thereby gaining additional probative value in light of the testimony that Goodwin had blood on his shirt and that he subsequently burned his clothes. Pursuant to the well-established principle that a trial court has broad discretion in the admission of evidence, we conclude that no abuse of discretion occurred in the admission of these photographs. Two of the photographs of the crime scene are arguably repetitive. Nevertheless, Goodwin's rights were not affected. In light of the abundant evidence of Goodwin's guilt, he was not prejudiced.

The photos were limited in number and had substantial probative value. Goodwin's eighth proposition of law lacks merit.

## VI

### Victim Impact Statement

In his ninth proposition of law, Goodwin claims that the trial judge improperly considered a request from the family of the victim that Goodwin be sentenced to death. After the jury's sentencing verdict, the trial judge noted that he "want[ed] the family of the victim to know I will hear, prior to sentencing from

any [family] member * * * who wants to speak regarding * * * Mustafa[.] * * * The Court will take that into consideration at sentencing." Before sentencing, Mustafa's brother, through the prosecutor, said he "agrees with the [jury's] verdict" and "would ask this Court to follow the recommendation * * * [and impose] the death penalty." Thereafter, Goodwin's aunt and Goodwin made statements requesting mercy.

By soliciting comments about Mustafa from his family, the trial court did not necessarily err. *Payne v. Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720, overruled the *per se* constitutional proscription against victim impact evidence in capital offense penalty hearings reflected in *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. But *Payne* reserved judgment about opinions from the victim's family as to the sentence a capital defendant should receive. *Payne*, 501 U.S. at 830, 111 S.Ct. at 2611, 115 L.Ed.2d at 739, fn. 2. Before the decision in *Payne*, this court held that opinions from witnesses as to the sentence "in a capital case violate the defendant's constitutional right to have the sentencing decision made by the jury and the judge." *State v. Huertas* (1990), 51 Ohio St.3d 22, 553 N.E.2d 1058, syllabus. Accord *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 438–439, 650 N.E.2d 878, 882.

In this case, Goodwin's death sentence remains constitutionally reliable despite this opinion from Mustafa's brother. The jury's recommendation remained unaffected, since the jury never heard the opinion. His brother's brief opinion, expressed by the prosecutor without emotion, elicited no objection. No plain error is present. See *State v. Campbell* (1994), 69 Ohio St.3d 38, 41, 630 N.E.2d 339, 345. Moreover, the trial judge was not soliciting sentence recommendations, *per se*, by simply asking for the family's views about Mustafa. Presumably, the trial judge remained uninfluenced, since his sentencing decision never referred to the brother's opinion. Cf. *State v. Allard* (1996), 75 Ohio St.3d 482, 489, 663 N.E.2d 1277, 1285; See *State v. Fautenberry*, 72 Ohio St.3d at 439, 650 N.E.2d at 882. Moreover, any error is readily cured by this court's independent sentence review. See *State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304. Accordingly, Goodwin's ninth proposition of law has no merit.

## VII

### Sufficiency of Evidence

In proposition of law ten, Goodwin asserts that the evidence was insufficient to sustain his conviction of violating R.C. 2903.01(A), which provides, in part, "No person shall purposely, and with prior calculation and design, cause the death of another * * *." In reviewing this contention, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The verdict will not be disturbed unless it is determined that reasonable minds could not have reached the conclusion reached by the trier of fact. *Id.* at 273, 574 N.E.2d at 503.

We have stated previously that it is not possible to establish a "bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.'" *State v. Taylor* (1997), 78 Ohio St.3d 15, 20, 676 N.E.2d 82, 89. There is no single set of factors to be mechanically applied when determining whether prior calculation and design is present. "[E]ach case turns on the particular facts and evidence presented at trial." *Id.*

Of necessity, a reviewing court must examine the record before it when considering this issue. There are no hard and fast factors to be applied to each case. Nor is there a precise formula to be used when considering those facts. Rather, a case-by-case method must be employed. In the case *sub judice,* we find that the record before us supports the jury's finding as well as that of the court of appeals. Appellant planned the aggravated robbery and recruited the others to join in the execution of his plan. Further, he armed himself with a .357 Magnum revolver and one of the other participants armed himself with a .45 semi-automatic pistol. Both guns came from appellant's house.

While appellant contended that the shooting was unplanned and an accident, the facts speak to the contrary. The evidence presented at trial showed that appellant placed his .357 Magnum revolver to the forehead of a cooperative and unresisting victim who at that moment was standing with his arms raised above his head. It was precisely at that time that appellant pulled the trigger, causing the bullet to enter the left forehead and exit the other side, killing Mustafa Sammour instantly. Appellant did not flee the store after this cold-blooded killing; rather, he placed the gun to the head of the other clerk and continued robbing the store. It is quite clear that appellant planned the robbery, and the murder was used to further his plan. It was an action that required thought on his part to place the gun at the victim's forehead, and he took additional time to decide to pull the trigger in order to carry out a calculated plan to obtain money from the store. This was not a spur-of-the-moment accidental shooting on the part of a robber. Appellant, after shooting Mustafa Sammour, proceeded to grab the other clerk, Almohannad Sammour, point the gun at his head, and order him to go to the safe. It is readily apparent from these facts that sufficient time, reflection, and acts were involved to provide the necessary thought processes that the law requires for a finding of prior calculation and design.

In *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, we held that "[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation,

and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." *Id.* at paragraph three of the syllabus. In the case at bar, such evidence was clearly adduced at trial. The tenth proposition of law asserted by Goodwin has no merit.

## VIII

### Jury Instructions

In his eleventh proposition of law, Goodwin asserts that the trial court made various errors in instructing the jury during the trial and penalty phases.

Goodwin asserts that the trial court erred in refusing to give an instruction, as requested, on murder, as a lesser included offense to the charge of aggravated murder with prior calculation and design. Murder, R.C. 2903.02, is a lesser included offense to aggravated murder, R.C. 2903.01(A). *State v. Mason* (1998), 82 Ohio St.3d 144, 161, 694 N.E.2d 932, 951. The sole difference is that prior calculation and design is absent from murder. Yet, "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge * * * is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Accord *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272, 274.

As the court of appeals below stated, not every case requires that the lesser charge be given.

" * * * If the evidence presented at trial meets [the *Thomas* test] with regard to the lesser included offense, the trial court must instruct the jury on the lesser offense. *State v. Loudermill* (1965), 2 Ohio St.2d 79 [31 O.O.2d 60, 206 N.E.2d 198]. If the test is not met, the lesser included offense charge need not be given. *State v. Kidder* (1987), 32 Ohio St.3d 279 [513 N.E.2d 311]. An instruction is not required every time some evidence is presented. There must be sufficient evidence admitted at trial to allow the jury to reasonably reject the greater offense and find the defendant guilty on the lesser included offense. *State v. Shane* (1992), 63 Ohio St.3d 630 [590 N.E.2d 272]." *State v. Goodwin* (Apr. 17, 1997), Cuyahoga App. No. 98531, unreported, at 21, 1997 WL 186770.

As we stated in the prior section, in the case *sub judice,* there was sufficient evidence presented by the state to support the element of prior calculation and design. The jury would not have reasonably rejected the greater offense to find appellant guilty of murder. See *State v. Wilson* (1996), 74 Ohio St.3d 381, 394–

395, 659 N.E.2d 292, 306.   Thus, the court did not err by failing to instruct the jury on the lesser included offense of murder.

The remaining issues asserted in proposition of law eleven are governed by plain error analysis, as Goodwin either failed to request specific instructions or object at trial.   *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

Goodwin's challenge to the statutory reasonable doubt instruction of Ohio is summarily rejected.   *State v. Nabozny* (1978), 54 Ohio St.2d 195, 8 O.O.3d 181, 375 N.E.2d 784, paragraph two of the syllabus;   *State v. Van Gundy* (1992), 64 Ohio St.3d 230, 594 N.E.2d 604.

Goodwin also argues that the trial court erred by including a negligence-causation instruction that a defendant "is responsible for the natural, logical, and foreseeable results that follow * * * from an unlawful act."   The court instructed further, "[t]he test [for foreseeability] is whether a reasonably prudent person * * * would have anticipated that death was likely to result to anyone from the performance of the unlawful act.'"

We have stated that the use of such foreseeability language in instructions in murder cases is questionable.   *State v. Burchfield* (1993), 66 Ohio St.3d 261, 263, 611 N.E.2d 819, 821.   However, the use of this language was not plain error. The trial court extensively instructed the jury on the requirement of purpose and intent prior to the causation language.   The court further instructed that purpose to kill may be inferred from the use of a deadly weapon.   Accordingly, despite the foreseeability instruction, the instructions as a whole made clear that the jury was required to find purpose to kill in order to convict.   See *State v. Phillips*, 74 Ohio St.3d at 100, 656 N.E.2d at 668.   The evidence also established that a gun was placed close to the victim's head, and the victim died as a result of a direct gunshot wound to the head.   Therefore, there is no plain error.

Goodwin also argues that the trial court erred by defining the term "principal offender" as "the one who personally performs every act constituting the offense * * *; that the defendant is the actor or absolute perpetrator."   Goodwin argues that the court should have instructed that the state must prove that Goodwin was "the actual killer."   See *State v. Penix* (1987), 32 Ohio St.3d 369, 371, 513 N.E.2d 744, 746.   A reading of the language used by the trial court, however, demonstrates that no plain error occurred.   If the jury found that Goodwin, in the words of the trial court, personally performed every act constituting the offense and was the actor or absolute perpetrator of the offenses charged, Goodwin was found to be, in fact, the "actual killer."   Goodwin's contention lacks merit.

Goodwin also raises other speculative claims regarding jury confusion whether he was the actual killer.   We find no plain error here.   Goodwin's eleventh proposition of law is meritless.

In his twelfth proposition of law, Goodwin claims that the trial court erred in failing to instruct the jury on involuntary manslaughter as a lesser included offense to aggravated murder. Goodwin failed to request such an instruction at trial and therefore waived all but plain error. *Underwood* at syllabus.

In support of his contention, Goodwin asserts that his statements that he "didn't mean to" shoot Mustafa, that the "gun just went off," and that he had been drinking gin the morning of the robbery warranted an instruction on involuntary manslaughter. We cannot agree. The evidence clearly establishes that Goodwin acted with prior calculation and design in killing Mustafa. Under any reasonable view, the killing was done with purpose. Goodwin fired a shot at point-blank range into Mustafa's head. The testimony by the pathologist indicated that death was virtually immediate. The location of this wound would lead any reasonable trier of fact, who did not believe the gun discharged accidentally, to conclude that Goodwin acted with purpose in causing the death of the victim. Additionally, Mustafa did not resist, cause panic, or cause confusion, nor was there any other cause of panic or confusion. Mustafa had his hands up. No reasonable juror who believed the state's version of the facts surrounding this shooting could have concluded that the killing was not done purposely and with prior calculation and design as that culpable mental state has been construed by this court. See *Palmer,* 80 Ohio St.3d at 562–563, 687 N.E.2d at 702–703; *State v. Eley* (1996), 77 Ohio St.3d 174, 180, 672 N.E.2d 640, 647–648.

An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. We find that the evidence adduced at trial could not have reasonably supported both an acquittal on the crime charged and a conviction on involuntary manslaughter. Moreover, the failure to request such an instruction does not constitute ineffective assistance of counsel, as Goodwin contends. Accordingly, there is no plain error, and we reject the twelfth proposition of law asserted by Goodwin.

In his second proposition of law, Goodwin asserts that the trial court improperly instructed the jury to weigh aggravating circumstances from separate charges against the mitigating factors and that the trial court improperly considered more than one aggravating circumstance in each count in its independent review. Goodwin failed to object to these issues at trial. His failure to object "constitutes a waiver * * *, unless, but for the error, the outcome of the trial clearly would have been otherwise." *Underwood* at syllabus.

A preliminary issue is whether the two counts of aggravated murder were merged by the trial court, since two aggravated murder counts involving the same victim are to be merged for purposes of sentencing. *State v. Lawson*

(1992), 64 Ohio St.3d 336, 351, 595 N.E.2d 902, 913. The trial court arguably merged the counts here when it submitted a single verdict form and requested a single jury recommendation.

Goodwin contends that the trial court erred in instructing the jury that it could consider both of the aggravating circumstances against the mitigation evidence. The essence of this contention is that because the trial judge never specifically told the jury that each aggravating circumstance was related to a separate count of murder, and because the judge consistently referred to the specifications in the plural ("aggravating circumstances") when instructing the jury, the jury improperly considered both aggravating circumstances together in each count against the evidence of mitigation. The judge also stated that the jury could consider both the quantity and the quality or importance of the aggravating circumstances. In *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph three of the syllabus, we stated that "[o]nly the aggravating circumstances related to a given count may be considered in assessing the penalty for that count." Therefore, Goodwin makes a reasonable argument.

Given that the trial judge appears to have merged the two counts for sentencing purposes, both the prosecutor and the trial court erred by referring to aggravating circumstances as if two separate aggravating circumstances existed instead of a single R.C. 2929.04(A)(7) specification in each count. As noted in *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph three of the syllabus, "[o]nly the aggravating circumstances related to a given count may be considered in assessing the penalty for that count." Accord *State v. Cook,* 65 Ohio St.3d at 526, 605 N.E.2d at 82. Splitting a single aggravating circumstance into two aggravating circumstances may unduly "taint the jury's deliberative process." *State v. Penix,* 32 Ohio St.3d at 371–372, 513 N.E.2d 744, 747. See, also, *State v. Johnson* (1986), 24 Ohio St.3d 87, 92–94, 24 OBR 282, 286–288, 494 N.E.2d 1061, 1065–1067.

Yet it was also clear that the language reflected the **same** aggravating circumstance simply repeated in both counts. Further, the trial court cautioned the jury not simply to consider the quantity of factors, but that "the quality or importance of the * * * aggravating circumstances must also be considered by you[.]"

Finally, this does not rise to the level of plain error. The aggravating circumstance was the same in each charge, an R.C. 2929.04(A)(7) specification. Thus, there was truly only one aggravating circumstance to weigh against the mitigation evidence in each count. It is unlikely the jury assigned the R.C. 2929.04(A)(7) specification double or extra weight simply because the trial judge referred to the specification for each count as "aggravating circumstances." Moreover, such an instructional error can be cured by this court's independent

review of the record and reweighing of the aggravating circumstances against mitigating factors. *Cook,* 65 Ohio St.3d at 527, 605 N.E.2d at 83. We may also correct the opinion of the trial court that references two aggravating circumstances for each count as part of our independent sentencing review. *State v. Fox* (1994), 69 Ohio St.3d 183, 191, 631 N.E.2d 124, 131. In light, also, of the lack of evidence presented at mitigation, we cannot conclude that plain error exists because it is apparent that the outcome would not have been different. See *Underwood* at syllabus.

Goodwin also asserts that the trial court and jury improperly weighed both components of the R.C. 2929.04(A)(7) specification as separate aggravating circumstances. Under R.C. 2929.04(A)(7), a defendant may be sentenced to death for committing aggravated murder if the defendant was either the principal offender (*i.e.,* the actual killer), or where the defendant was not the principal offender, if the defendant committed the murder with prior calculation and design. "The language of the statute provides that these are alternatives which are not to be charged and proven in the same cause." *Penix,* 32 Ohio St.3d at 371, 513 N.E.2d at 746.

Our review of the record indicates that there is no merit to this claim. The instructions, as well as the comments made to the jury by the prosecution, specifically referred to these components separately, and in the disjunctive. The statutory language was repeated to the jury. The verdict of the jury tracks the statutory language. As Goodwin did not object or request a more specific instruction, his claim is subject to plain error analysis, and plain error does not exist here. Additionally, we find no plain error with regard to Goodwin's complaints about the opinion of the trial court. According to Goodwin, the trial court violated *Penix* by its references to prior calculation and design. This assertion is unfounded. The language in the trial court opinion concerning prior calculation and design arguably does not discuss the aggravating circumstance, but rather whether Goodwin was guilty of the count of aggravated murder committed with prior calculation and design with which he was charged. Again, in light of the paucity of mitigating evidence offered, if the trial court did err, the outcome would not have been different. Further, we may correct such an error upon independent sentence review.

Accordingly, the second proposition of law asserted by Goodwin lacks merit.

## IX

### Settled Issues

In his fourteenth proposition of law, Goodwin contends that imposition of the death penalty violates United States treaties and therefore is violative of the Supremacy Clause of the United States Constitution. We rejected such an

argument in *Phillips,* 74 Ohio St.3d at 103–104, 656 N.E.2d at 671. Accordingly, this claim has no merit.

In his fifteenth proposition of law, Goodwin attacks the constitutionality of the death penalty statute of Ohio. Having previously examined these issues and having determined that the statute is constitutional, we summarily reject this proposition of law. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph six of the syllabus; *State v. Mason* (1998), 82 Ohio St.3d 144, 169, 694 N.E.2d 932, 957.

## X

### Independent Sentence Assessment

In his thirteenth proposition of law, Goodwin argues that his death sentence is excessive, inappropriate, and disproportionate. We will consider these arguments in our independent sentence review.

Pursuant to R.C. 2929.05, we now proceed to independently weigh the aggravating circumstance against the mitigating factors, and determine whether Goodwin's sentence is disproportionate to sentences in other cases.

Goodwin presented no evidence before the jury at the penalty hearing. Goodwin's aunt did assert that Goodwin, when born, was "drug-dependent." When Goodwin was nine years old, he was abandoned by his mother, and his aunt took him in. At sentencing, Goodwin apologized to the family of the victim for what happened.

We find, after independent assessment, that the evidence proves the aggravating circumstance beyond a reasonable doubt. We further find that the nature and circumstances of the crime offer nothing in mitigation for the appellant. Goodwin planned the robbery, solicited others to join him, grabbed an unresisting Mustafa, and then shot him.

Very little basis exists to find any mitigation in Goodwin's history, character, or background. Goodwin's counsel presented no evidence. The statement by his aunt that Goodwin had a difficult childhood and the reference at trial suggesting that he has children is entitled to some, but very little, weight in mitigation. The R.C. 2929.04(B)(4) mitigating factor (youth of the offender), given Goodwin's age of nineteen, is entitled to nominal weight. None of the other statutory mitigating factors is applicable. Considering "other factors" under R.C. 2929.04(B)(7), Goodwin additionally relied on residual doubt, which is no longer a mitigating factor. *McGuire,* 80 Ohio St.3d 390, 686 N.E.2d 1112, at syllabus. That his accomplices did not receive a similar punishment is entitled to no weight, as their

lesser roles explain their punishment. Goodwin's apology to the family of Mustafa is entitled to some, but very minimal, weight in mitigation.

We have weighed the aggravating circumstance against the evidence presented in mitigation, and find that the aggravating circumstance of R.C. 2929.04(A)(7) in each count outweighs the mitigating factors beyond a reasonable doubt. The murder of Mustafa Sammour was calculated, tragic, savage, and brutal. The very limited mitigating factors vanish into insignificance when weighed against the aggravating circumstance.

Finally, we have reviewed the sentence imposed in this case and compared it to those in which we have previously affirmed the death penalty. We have previously upheld the sentence of death in cases involving murder with prior calculation and design or felony-murder committed during an aggravated robbery. *State v. Clemons* (1998), 82 Ohio St.3d 438, 696 N.E.2d 1009; *Palmer; State v. Taylor* (1997), 78 Ohio St.3d 15, 676 N.E.2d 82; *Eley; State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019; *Wilson; State v. Allen* (1995), 73 Ohio St.3d 626, 653 N.E.2d 675; *State v. Hill* (1995), 73 Ohio St.3d 433, 653 N.E.2d 271; *State v. Mack* (1995), 73 Ohio St.3d 502, 653 N.E.2d 329; *State v. Lewis* (1993), 67 Ohio St.3d 200, 616 N.E.2d 921; *State v. Green* (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253. We find that the sentence of death imposed in this case is not excessive, inappropriate, or disproportionate in comparison.

For the foregoing reasons, we affirm the convictions, and affirm the sentences, including the sentence of death.

*Judgment affirmed.*

DOUGLAS, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., PFEIFER and COOK, JJ., concur in part and dissent in part.

———

**MOYER, C.J., concurring in part and dissenting in part.** I concur in the holding of the majority that affirms the conviction and sentence of death pursuant to R.C. 2903.01(B) (felony-murder). However, I dissent as to the conviction for aggravated murder pursuant to R.C. 2903.01(A) (prior calculation and design).

In 1974, the General Assembly explicitly superseded previous court decisions that held murder could be deemed premeditated even though the intent to kill was conceived and executed on the spur of the moment. See 134 Ohio Laws, Part II, 1866, 1900, Am.Sub.H.B. No. 511; 1973 Technical Committee Comment to Am.Sub.H.B. No. 511 (a Legislative Service Commission summary), R.C. 2903.01; *State v. Taylor* (1997), 78 Ohio St.3d 15, 19, 676 N.E.2d 82, 88.

R.C. 2903.01 redefined the requisite element of intent for the crime of aggravated murder to be "prior calculation and design," which embodies "the classic concept of cold-blooded killing while discarding the notion that only an instant's prior deliberation is necessary." 1973 Technical Committee Comment, *supra*, R.C. 2903.01; *State v. Taylor*, 78 Ohio St.3d at 19, 676 N.E.2d at 88. This standard is more stringent than the "deliberate and premeditated" standard of the former murder statute. *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, paragraph one of the syllabus. In adopting this more stringent standard, the General Assembly intended to require more than an instantaneous deliberation, and more than a few moments of deliberation. It intended to require a planned scheme designed to implement a calculated decision to kill. *Id.*, 56 Ohio St.2d at 11, 10 O.O.3d at 6, 381 N.E.2d at 193; *State v. Taylor*, 78 Ohio St.3d at 19, 676 N.E.2d at 88.

The statute and its purpose are clear. Nonetheless, a majority of this court once again disregards the words and the intent of the General Assembly and of its own precedent to extend the application of "prior calculation and design" beyond its intended scope. In doing so, it disregards the explicit rule of construction under R.C. 2901.04, which states that "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

The majority holds that prior calculation and design was proven in this case because "[i]t was an action that required thought on [the defendant's] part to place the gun at the victim's forehead, and he took additional time to decide to pull the trigger in order to carry out a calculated plan to obtain money from the store. This was not a spur-of-the-moment accidental shooting on the part of a robber. * * * The evidence clearly establishes that Goodwin acted with prior calculation and design in killing Mustafa. Under any reasonable view, the killing was done with purpose."

While the majority may be correct that the evidence supports a finding that this was a purposeful, non-accidental killing, there is absolutely nothing in the record to indicate more than an instantaneous deliberation, or more than an intent to kill conceived and executed on the spur of the moment.

The majority opinion equates "purpose" with "prior calculation and design." However, these are two separate elements of aggravated murder. "Purpose," without prior calculation and design, is sufficient for a conviction of murder under R.C. 2903.02, but cannot sustain a finding of guilt for aggravated murder under R.C. 2903.01(A). As these are separate elements, "purpose" cannot be a basis for finding "prior calculation and design."

Aside from the purposeful nature of the killing, the majority, in this case, has found prior calculation based solely on the fact that Goodwin raised a gun to the

victim and pulled the trigger. This reasoning is wholly inadequate and simply restates the fact that Goodwin did shoot Mustafa. The act of shooting Mustafa, however, cannot be the sole basis for a finding of prior calculation and design, as it does not distinguish between whether the killing was aggravated murder, murder, or voluntary manslaughter. All of these charges are based on an intentional killing that would require the minimal thought process of raising a weapon and implementing it to effect a killing. However, only aggravated murder requires an additional element of prior calculation and design. If the conduct of the defendant in this case constitutes prior calculation and design, it is difficult to imagine how any non-accidental killing could be anything less. Such a holding runs contrary to the plain meaning of "prior calculation and design," the explicit legislative intent of the statute, and our prior case law. R.C. 2903.01(A); 134 Ohio Laws, Part II, 1866, 1900; 1973 Technical Committee Comment, *supra,* R.C. 2903.01. See, also, *e.g., State v. Reed* (1981), 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359 (when the only evidence of intent, in a murder resulting from an alleged attempted robbery, is the shooting itself and a prior statement by the defendant that "if a cop got in his way [during a robbery] he would blow him away," the evidence is insufficient to establish prior calculation and design); *State v. Cotton,* at paragraphs one and two of the syllabus (" 'prior calculation and design' is a more stringent element than * * * 'deliberate and premeditated malice' "; "[i]nstantaneous deliberation is not sufficient to constitute 'prior calculation and design' "). Under the new test implied in the majority opinion, the charges of aggravated murder, murder, and voluntary manslaughter will be rendered indistinguishable.

The only other support the majority cites to bolster its position is that Goodwin planned the robbery. This is, as a matter of law, insufficient to prove that he planned to murder Mustafa. The majority holding effectively equates a scheme designed to implement a calculated decision to *rob,* with a scheme designed to implement a calculated decision to *kill.* Prior calculation and design for murder must be based on a calculated decision to kill, not a calculated decision to commit robbery or any other felony. To hold otherwise would render superfluous the felony-murder provisions of R.C. 2903.01(B). This result contravenes the general rule of statutory construction codified under R.C. 1.47(B), stating that in enacting a statute, "[t]he entire statute is intended to be effective." See *Richards v. Market Exchange Bank Co.* (1910), 81 Ohio St. 348, 90 N.E. 1000.

Further, if the robbery plan had involved a preplanned intent to kill, it makes no sense that Goodwin would kill Mustafa and not kill the other store clerk who was a witness to the robbery and killing. Though the majority cites the fact that after Mustafa was shot, Goodwin grabbed the other clerk and forced him at gunpoint to go to the safe, it ignores the fact that this clerk was not injured. If this second clerk had been shot, or even if Mustafa had been shot numerous

times, the cases cited by the majority might support a finding of prior calculation and design. However, without some break in the sequence between when Goodwin conceived of shooting Mustafa and when the death was effectuated, the cases cited by the majority do not support a finding of prior calculation and design in this case. See, *e.g.*, *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685 (defendant convicted of killing two victims, each shot twice in the head execution-style, and evidence supported a finding that the second victim was killed because he arrived at the scene just after the first shooting); *State v. Taylor* (defendant shot the victim several times and followed him as he tried to crawl away and then shot him three or four more times); *State v. Cotton* (defendant shot two police officers who were chasing him in connection with a forged check, after stealing the gun from one officer and taking the time to shoot each in the back after they were wounded and either incapacitated or trying to retreat).

These cases are significantly different from the case at issue. They all involve more than one shooting and a significant period of time passing between the first shot and the final shot. Most involve more than one victim, and all involve killing those who were wounded or who witnessed the original shooting. None correlate to a case where one victim was killed in a single instant and no further injury to that victim or other witnesses occurred.

When the evidence is construed in a light most favorable to the prosecution as required under *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, there is insufficient evidence to find, beyond a reasonable doubt, that Goodwin calculated, schemed, or planned to kill Mustafa before entering the store. Nor is there any evidence of more than an instantaneous deliberation between the time he formed the intent to kill Mustafa, if he even made a conscious decision to do so, and the moment he pulled the trigger. There is no evidence that the robbery plan involved a plan to kill. There is no evidence that would explain the killing of Mustafa but not the other clerk, and there is no evidence that Goodwin was prevented from killing the other clerk if that had been his intention. In fact, all evidence on the record contradicts these theories. Thus, for all the aforementioned reasons, I dissent from the majority and would affirm the conviction and sentence of death pursuant to R.C. 2903.01(B) only, and reverse the conviction pursuant to R.C. 2903.01(A).

PFEIFER and COOK, JJ., concur in the foregoing opinion.