DECISION.
On September 27, 1999, defendant-appellant Denise Lipscomb and three co-defendants decided to rob a taxicab driver to obtain money. One of the co-defendants, Sion Graham, gave Lipscomb a gun, which she placed inside her jacket pocket. Graham also instructed Lipscomb on how to use the gun, telling her to cock it for maximum intimidation.
Lemar Goss, another co-defendant, telephoned for a taxi. Driver John Arkady was dispatched to Goss's address on Montgomery Road. When the cab arrived, Goss got into the front seat, his sister got into the back seat on the passenger side, and Lipscomb got into the back seat behind Arkady. Goss told Arkady to drive to Winton Terrace. While en route, Goss asked Arkady to stop at a store for change for a twenty-dollar bill. Upon arriving at the store, Lipscomb and Goss's sister left the cab. When they returned, they took their prior seats and instructed Arkady to drive to Winneste Avenue in Winton Terrace.
When the taxicab arrived in Winton Terrace, Lipscomb pulled the gun out of her pocket, cocked it, placed it against the back of Arkady's head and ordered him to stop. Arkady stopped the cab. Lipscomb shot Arkady in the back of the head, killing him. According to Lipscomb's statement to police, the gun accidentally discharged when Arkady raised his hands. Lipscomb and her two accomplices panicked and fled without taking any money from Arkady. Lipscomb put the gun into a sock and placed it on the top of her refrigerator. Later, Graham retrieved the gun.
Lipscomb was indicted for aggravated murder, with three death-penalty specifications, and aggravated robbery. Both counts contained firearm specifications. The death-penalty specifications for the aggravated-murder count were that Lipscomb had committed aggravated murder while discharging a firearm from a motor vehicle; that Lipscomb had committed aggravated murder for the purpose of escaping apprehension or detention for aggravated robbery; and that Lipscomb had committed aggravated murder during the course of committing an aggravated robbery.
Following a jury trial, Lipscomb was found guilty of aggravated murder with the specification that she had committed the murder during the course of an aggravated robbery. She was also found guilty of aggravated robbery and the firearm specifications. The jury recommended a life sentence for the aggravated murder, with parole eligibility after thirty full years of incarceration. The trial court imposed the sentence recommended by the jury. The court also imposed ten years' incarceration for the aggravated-robbery count and three years for the accompanying firearm specification. All sentences were ordered to run consecutively. Lipscomb has appealed, raising eight assignments of error for our review.
The first assignment of error alleges that the trial court erred in denying Lipscomb's request for a "corrective jury instruction" on the proper procedure for deliberating on lesser-included offenses.
The trial court instructed the jury on aggravated murder, and on the lesser-included offenses of murder and involuntary manslaughter. The record reveals that the trial court did not specifically instruct the jury about the procedure for considering the lesser-included offenses. While reading the verdict forms, the trial court stated to the jury, "Your verdict must be unanimous. That means each and every one of you must agree on them." (T.p. 774-775.) The trial court did not instruct the jury that it had to acquit Lipscomb of aggravated murder before considering the murder and involuntary manslaughter charges.
After the jury had been deliberating several hours, it asked the following question: "If we have convicted on aggravated robbery, how can a charge of involuntary manslaughter be considered, as mentioned by the defense attorney, given the offense is a felony of the first degree?" The trial court answered,
 Your verdict must comport with the law. You have the instructions of law. If the facts of a particular crime do not comport with the instructions, then your verdict should not be that crime.
(T.p. 780.)
The next day, defense counsel requested that the trial court instruct the jurors that they did not have to agree to acquit Lipscomb on the greater offense before they considered the lesser-included offenses. The trial court refused to give the instruction at that time, but the court agreed to give the instruction if the jury indicated that it could not reach a verdict on the aggravated-murder charge. Lipscomb now argues that the trial court's failure to give the requested instruction was erroneous.
Initially, we hold that the request for the jury instruction was timely and that, therefore, the waiver doctrine does not apply. We hold further that the trial court did not err in denying Lipscomb's request for the jury instruction. The trial court's original instruction did not require the jury to acquit Lipscomb on the greater offense before considering the lesser-included offenses. See State v. Allen (1995), 73 Ohio St.3d 626,653 N.E.2d 675. Therefore, it was not an "acquittal first" instruction, the giving of which would have been prejudicial error pursuant to Statev. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286. The record reveals that the jury was not confused by the instructions. Nor was it coerced into reaching its verdict. See State v. Thomas, supra. We have reviewed the entire record, and we hold that Lipscomb was not prejudiced by the trial court's refusal to give the requested instruction. The first assignment of error is overruled.
Lipscomb's second assignment of error alleges that she was denied the effective assistance of counsel because her trial counsel failed to timely request a jury instruction on the "proper procedure for deliberating on lesser-included offenses."
 Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; accord State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904,924. We have held, under the first assignment of error, that counsel's request for the jury instruction was timely, and that the trial court did not err in failing to give the requested instruction. The second assignment of error is overruled.
The third assignment of error, which alleges that the trial court erred in denying Lipscomb's motions to prohibit or delay the death qualification of the jury and to ban the use of peremptory challenges to exclude jurors who expressed reservations about the imposition of the death penalty, is overruled. The transcript of the voir dire reveals that the trial court used the correct standard for death qualification of the jurors as established in Wainwright v. Witt (1985), 469 U.S. 412,105 S.Ct. 844. The trial court properly made the determination that the death-penalty views of the prospective jurors who were excused "would prevent or substantially impair the performance of their duties as jurors." See State v. Rogers (1985), 17 Ohio St.3d 174, 478 N.E.2d 984, paragraph three of the syllabus, vacated on other grounds (1985),474 U.S. 1002, 106 S.Ct. 518.
Lipscomb's fourth assignment of error alleges that the trial court erred in denying her motion to admit evidence, during the sentencing phase of the trial, concerning her co-defendants' pleas and sentences.
In State v. Goodwin (1999), 84 Ohio St.3d 331, 703 N.E.2d 1251, the Ohio Supreme Court held that the fact that Goodwin's co-defendants received lesser punishments was entitled to no weight as a mitigating factor in the sentencing phase of a death-penalty prosecution. In its proportionality review of the death sentence in State v. Issa, supra, the Ohio Supreme Court refused to consider the cases of Issa's co-defendants, whose trials had ended in acquittal or in the imposition of a sentence of life imprisonment without the possibility of parole. TheIssa court stated, citing State v. Jamison (1990), 49 Ohio St.3d 182,191, 552 N.E.2d 180, 188, that "disparity of sentence does not justify reversal when the sentence is neither illegal nor an abuse of discretion."
We hold here that the trial court did not err in excluding the proffered evidence. The sentences of the co-defendants were not entitled to weight as mitigating factors. As the Ohio Supreme Court stated inGoodwin, the lesser sentences of the co-defendants could be explained by their lesser culpability. The sentence imposed on Lipscomb was not illegal or an abuse of discretion. The fourth assignment of error is overruled.
The fifth assignment of error, alleging that the trial court erred in instructing the jury on the definition of reasonable doubt, is overruled. The trial court used the definition of reasonable doubt provided in R.C. 2901.05(D). The Ohio Supreme Court has upheld the constitutionality of that jury instruction. See State v. Awkal (1996),76 Ohio St.3d 324, 667 N.E.2d 960; State v. Frazier (1995),73 Ohio St.3d 323, 652 N.E.2d 1000.
The sixth assignment of error, which alleges that Lipscomb's convictions were based upon insufficient evidence and were against the manifest weight of the evidence, is overruled. After viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found that the essential elements of the crimes had been proven beyond a reasonable doubt. See State v. Issa, supra;State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Further, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in reaching its verdicts. See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 545-546.
Lipscomb's seventh assignment of error alleges that the trial court erred in permitting the prosecution to strike two African-American prospective jurors from the venire. In State v. McCoy (Nov. 9, 2001), Hamilton App. Nos. C-000659 and C-000660, unreported, we stated,
 The Equal Protection Cause of the United States Constitution prohibits purposeful discrimination by the prosecution in exercising a peremptory challenge to excuse a juror on account of his race. See Batson v. Kentucky (1986), 476 U.S. 79, 89, 106 S.Ct. 1712, 1719; State v. Hernandez (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279. To establish a prima facie case of purposeful discrimination, an accused must show (1) that the prosecution has peremptorily challenged a member of a recognized racial group, and (2) that these facts and any other relevant circumstances raise the inference that the prosecution has exercised its peremptory challenge to exclude the juror on account of his race. Once the accused has established a prima facie case, the burden of production shifts to the prosecution to tender a race-neutral explanation. See State v. Hill (1995), 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271, 282, certiorari denied (1996), 516 U.S. 1079, 116 S.Ct. 788
(citing Hernandez, supra at 582, 589 N.E.2d at 1313). The trial court must then determine whether the accused has proved purposeful racial discrimination. A finding by the trial court that the accused has failed to prove purposeful discrimination will not be reversed on appeal in the absence of a determination that it was "clearly erroneous." Hernandez, supra at 582-583, 589 N.E.2d at 1313-1314 (quoting Hernandez v. New York [1991], 500 U.S. 352, 369, 111 S.Ct. 1859, 1871).
 The state challenged two African-American prospective jurors. In both instances, the prosecutor provided a race-neutral explanation for the challenge. The first prospective juror was excused because she expressed ambivalence toward the death penalty and because her ex-husband had been imprisoned in Texas for aggravated robbery. The second prospective juror was excused because, in a prior encounter with police, he had been taken into custody for a crime he had not committed. Further, he had a previous conviction for driving under the influence for which he had served ten days of incarceration. A third African-American prospective juror was not challenged.
The reasons proffered by the prosecutor for excusing the prospective jurors were race-neutral and nondiscriminatory. We cannot say that the trial court's determination that Lipscomb had failed to prove purposeful racial discrimination was clearly erroneous. The seventh assignment of error is overruled.
The eighth assignment of error alleges that the trial court erred in imposing the maximum sentence for the aggravated robbery, and in ordering that it be served consecutively.
The eighth assignment of error is sustained solely for the reason that the trial court failed to make any of the findings required by R.C.2929.14(C) for the imposition of the maximum prison term, or by R.C.2929.14(E)(4) for the imposition of consecutive sentences. The record does not contain a sentencing worksheet, and the transcript does not demonstrate that the trial court made the required findings. Therefore, we must vacate the sentence imposed by the trial court for the aggravated robbery and remand the case for resentencing on that offense in accordance with R.C. 2929.14(C) and 2929.14(E)(4).
The sentence imposed on the aggravated-robbery conviction is vacated, and the cause is remanded for resentencing on that one conviction in accordance with law and this decision. The judgment of the trial court is affirmed in all other respects.
Judgment affirmed in part and vacated in part, and cause remanded.
Hildebrandt and Painter, JJ., concur.