OPINION
This is an appeal from the Trumbull County Court of Common Pleas. Appellant, Aaron D. Blakely, seeks the reversal of his conviction on two counts of assault on a peace officer, in violation of R.C. 2903.13(A)
On November 3, 1997, appellant was indicted and charged as follows: count one, felonious assault of a peace officer, a felony of the first degree, in violation of R.C. 2903.11(A)(1) and R.C. 2903.11(B); and count two, assault on a peace officer, a felony of the fourth degree, in violation of R.C. 2903.13(A) and R.C. 2903.13(C).
The matter proceeded to a jury trial beginning on February 2, 1998. The following facts were adduced from the jury trial. Appellee, the State of Ohio, called several police officers to testify in its behalf. Jaison Holland ("Holland"), an officer with the Warren Township Police Department, testified that on August 16, 1997, while he was on duty and stopped at a red light, appellant's mother, Gloria McKinney ("McKinney"), informed him that she had been assaulted. Appellant, who was in the parking lot of the Brothers of the Hammer Club ("Club"), walked towards Holland and McKinney and demanded that he enter the Club and arrest the people that assaulted his mother. Holland advised appellant that he was out of his jurisdiction, and thus, he had no "police power to go in and arrest for an assault."
According to Holland, appellant seemed very intoxicated and was "acting somewhat irrational because there was a group of males coming from the clubhouse and he was challenging them" as he believed one of those men was responsible for assaulting his mother. Holland radioed the Warren City Police Department ("WPD") and advised them of a large disturbance outside of the Club. Holland then activated his overhead lights and within thirty seconds Officer Kovach ("Kovach") of the WPD arrived. Holland recalled that after Kovach got there, appellant, while walking, continued "to go to the westbound lanes of travel over toward the [Club] and [Kovach] went over and tried to explain to him that he shouldn't be in the lanes of travel." However, appellant did not comply with Kovach's instructions. Instead, he continued yelling at the people outside the Club. Kovach grabbed appellant's arm to lead him away from the crowd and Holland heard appellant say, "fuck this."
Additionally, Holland witnessed appellant punch Kovach "in the face with his right hand." Kovach proceeded to pull appellant over to his cruiser, at which time more WPD officers arrived. Holland remembered that appellant had Kovach "pinned against the front windshield of his cruiser and was punching him with his right arm and the right fist * * * at least two to three times before [Holland] came over." Holland stated that more officers arrived at the scene and tried to restrain appellant. Appellant's mother appeared to be on Kovach's back attempting to hinder him from taking appellant into custody. Holland also observed appellant strike another officer in the face. He stated that "chemical mace [was] administered toward [appellant]," and eventually he was handcuffed and put in the rear of Kovach's cruiser.
At the conclusion of Holland's testimony, Officer Albanese ("Albanese") of the WPD testified that while he was trying to subdue appellant, appellant struck him in the face. Furthermore, the defense attorney asked Albanese if, at the preliminary hearing on September 29, 1997, he recalled saying that he did not see appellant "punch" Kovach. Albanese replied that he did not witness appellant "punch" Kovach, but he observed him "hit" Kovach. Albanese explained that in his opinion there is a difference between the meaning of punching and hitting. He further stated that appellant "assaulted Officer Kovach."
Following Albanese's statements, Officer Miller ("Miller") of the WPD warranted that he viewed appellant strike Kovach several times in the face and the body. Thereafter, Miller recalled using his pepper spray or mace on appellant. He stated that appellant continued fighting, but he was not as effective since he could not see as well. Ultimately, he and several other officers subdued appellant.
Kovach testified subsequent to Miller and indicated that after he was dispatched, he arrived at the scene. He was the first WPD police officer to reach the incident. Upon his arrival, he heard appellant say "I'm gonna kill `em," and he assumed that appellant was referring to Holland because the only male Kovach saw was Holland. He observed a woman in a car, but he did not realize that she was appellant's mother. Kovach recalled trying to calm appellant down. He believed appellant was armed, and thus, wanted to "pat him down." Therefore, he led appellant by his hand off the roadway, but he was not cooperative. Kovach recalled being punched in the face. He also witnessed appellant fighting with the other officers and saw appellant hit Albanese in the face. As a result of the altercation, Kovach injured his hand and missed approximately one month of work.
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled. Appellant also moved for the first count to be reduced or dismissed. The trial court overruled that motion with the understanding that the issue could be revisited.
As part of appellant's case-in-chief, Karen Henderson ("Henderson"), a friend of appellant, was called to testify. She witnessed the events the early morning of August 16, 1997. She recalled that the police officers had appellant's arms and his mother "was trying to get to [appellant] and when she broke free of one arm, that [a] police officer grabbed her, [and] threw her on the car." She also stated that appellant observed this and ran towards his mother when the officers "grabbed him and they started hitting him with their night sticks and punching him." She indicated that she viewed the officers spray mace in his face.
Following Henderson's statements, McKinney testified. She recounted that she and her ex-boyfriend got in an altercation in the parking lot of the Club. She sent for her son, appellant, who was inside the Club. When he arrived outside, she told him what had occurred. They got in their car and were at a red light when Holland pulled up beside them. Appellant exited the vehicle and told Holland what had happened, but he explained that he had to call the WPD since he was out of his jurisdiction. In the meantime, the WPD officers arrived. McKinney recalled that Kovach exited his patrol car and grabbed appellant to handcuff him.
At the conclusion of McKinney's testimony, defense counsel moved in limine that appellee not be allowed to question appellant about his past criminal record because appellant's attorney indicated that he had not received appellant's criminal record until shortly before the trial began. The trial court sustained the motion and instructed the prosecutor to refrain from any discussion regarding appellant's prior criminal record.
Appellant testified in his own behalf. He related that on the morning in question, his mother's ex-boyfriend picked him up from work. The two men went out for a couple of drinks. Since McKinney also had to be picked up from work, her ex-boyfriend left appellant at the bar to retrieve McKinney. Later, appellant and his mother dropped her ex-boyfriend off at home, and proceeded to the Club. While they were in the Club, they both had a drink. Meanwhile, appellant's mother's ex-boyfriend arrived and claimed that he left a few things in the car, so McKinney went to the vehicle with her ex-boyfriend. A bit later, a patron of the Club came into the bar and told appellant that his mother was "in some type of incident out in the parking." When appellant realized that McKinney's ex-boyfriend had hurt her, he became very upset. They left the Club and while they were stopped at a traffic light, a Warren Township police officer pulled up beside them. Appellant motioned for the officer to roll down his window several times, but the officer did not respond. Appellant exited his vehicle and told the officer that his mother had been attacked.
During his testimony, appellant admitted that he "might have been cussing a little bit." He recalled that his hands were put behind his back and he was being placed under arrest. According to appellant, there were five or six people all over him. He claimed that he was being hit and thrown around. Appellant also alleged that Kovach sprayed him with mace while he was handcuffed and in the rear of the police cruiser. Additionally, appellant asserted that once he arrived at the police station, he "was hit again. They took [his] face while [he] was fully handcuffed into either a bucket, a pot or something full of water and dumped [his] head into it * * *." He requested a breathalyzer test while he was at the police station, but did not receive one. He further added that he did not intentionally hurt anyone.
On February 4, 1998, the jury returned a verdict of not guilty of felonious assault on a police officer but guilty of two counts of assault on a police officer. A sentencing hearing was held on February 10, 1998. At the hearing, appellant stated that he was innocent of the crime charged and that he believed "it's been a railroad job." He complained that he was rushed through the case and that he only met with his attorney one time prior to trial. He continued by stating that the police officers "covered their own behinds simply because of the fact that they [knew] that they were wrong." He admitted that he may have resisted arrest or acted disorderly, but he denied being intoxicated and denied assaulting any officers. The trial judge took into consideration appellant's statements, appellee's recommendations, and appellant's prior record. The trial court reasoned that appellant had a plethora of theft offenses and two prior convictions of resisting arrest. In considering the foregoing factors, the trial judge sentenced appellant to serve a prison term of six months as to each count and to pay the costs of the action.
On March 5, 1998 appellant filed a notice of appeal. On March 10, 1998, appellant also filed a motion to stay execution of his sentence pending his appeal with the trial court. The trial court overruled appellant's motion on April 3, 1998 after indicating that it had reviewed the presentence investigation and considered appellant's statement. On April 15, 1998, appellant filed another motion to stay execution of sentence pending appeal with this court. On June 8, 1998, the appeal was dismissed sua sponte for failure to prosecute and any pending motions were overruled as moot. On July 2, 1998, appellant filed a motion to reinstate the appeal which was granted.
Appellant raises the following assignment of error:
 "[1.] Appellant's Sixth Amendment constitutional rights were denied due to the ineffective assistance of counsel."
 Appellant's sole contention is that he was denied his constitutional right to effective assistance of counsel because his trial attorney failed to communicate with him and neglected to interview or subpoena certain prospective witnesses whose testimony may have supported his version of the events.
Appellant claims that his attorney failed to communicate with him or interview him and his witnesses prior to trial. However, Henderson testified that she spoke with appellant's attorney about what she saw. Specifically, she was asked if she spoke with either appellant or his trial counsel prior to the trial, to which she replied, "[o]h, I talked to [appellant's] lawyer about what I saw." Although there is no indication when it occurred, this statement negates appellant's argument that his trial counsel neglected to interview prospective witnesses. It also appears that appellant was one of the sources as to who witnessed the incident. Further, there is nothing in the record showing appellant offered no proof that defense counsel did not attempt to contact other witnesses.
Moreover, appellant admitted at the sentencing hearing that he met with his attorney one time prior to trial. Additionally, appellant's trial counsel gave a well developed and detailed opening statement in which he declared that appellant was the victim of police brutality and not the aggressor towards two WPD police officers. Appellant's attorney also knew where appellant's mother was employed. The specificity of this opening statement supports the conclusion that appellant's trial counsel did have contact with witnesses and data pertaining to the case prior to trial. Additionally, appellant's own statements and the record reflect that appellant had contact with his trial counsel at least one time, if not more than once, prior to trial. Thus, this argument lacks merit.
To warrant a reversal on the grounds that an appellant was not provided with the effective assistance of counsel, an appellant bears the burden of meeting the two-prong test set forth inStrickland v. Washington (1984), 466 U.S. 668. Strickland states that:
 "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
 In order to determine whether an attorney's performance was deficient, the trial court must inquire whether the attorney provided "reasonably effective assistance," considering all of the circumstances. State v. Loza (1994), 71 Ohio St.3d 61, 83, quoting Strickland. "A Sixth Amendment violation does not occur `unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' * * *" State v. Goodwin (1999), 84 Ohio St.3d 331, 334, quoting State v. Bradley (1989), 42 Ohio St.3d 136, 142. Further, a properly licensed attorney is presumed to be competent, and thus, judicial scrutiny of his or her performance must be highly deferential. Strickland, 466 U.S. at 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49.
Under the second prong of the Strickland test, an appellant must show that he or she was prejudiced. To establish prejudice, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus; see, also, Statev. Stojetz (1999), 84 Ohio St.3d 452, 457.
In relation to the failure to interview or subpoena witnesses who may have offered exculpatory testimony, this court has held that such inaction on the part of trial counsel is neglectful and can constitute deficient performance. State v. Akers (Apr. 4, 1997), Portage App. No. 95-P-0073, unreported, at 17-18. However, this court held that a mere allegation that the testimony of a prospective witness may have been helpful is insufficient to establish the prejudice prong of the Strickland test. Id. Consequently, prejudice cannot be shown when the record before the reviewing court contains no indication regarding the intended testimony of the prospective witnesses. State v. Bleasdale (Sept. 6, 1996), Ashtabula App. No. 95-A-0047, unreported, at 12.
In the case sub judice, the record did not contain an offer of proof concerning the testimony of the potential witnesses. Nor did the record contain any statements indicating that any other witnesses would have corroborated appellant's version of the facts.[1] As a result, even if defense counsel's performance was deficient in failing to interview or subpoena other witnesses, appellant did not demonstrate that the outcome of the trial would have been different. Appellant also did not establish that he was prejudiced in any way. We conclude that our review of the record does not disclose any conduct that violated appellant's Sixth Amendment right to effective assistance of counsel. Thus, counsel's performance did not fall below the objective standard of reasonableness.
For the foregoing reasons, appellant's assignment of error is without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.
__________________________________________
PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] Appellant did file a post conviction petition alleging essentially the same grounds. However, it contained no affidavits.