The following appeal arises from the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, wherein James M. Dobran was designated sole residential parent and the prior shared parenting plan was terminated. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
Cynthia Ann Dobran, "appellant", and James M. Dobran, "appellee", were married on May 15, 1987. During the course of said marriage, three children were born: Eleanor Maria (D.O.B.: 11/30/87), Heidi Elizabeth (D.O.B.: 3/25/89) and James E. (D.O.B.: 1/31/92). On October 9, 1992, appellant filed a complaint for divorce. Appellee filed a counterclaim for divorce on November 13, 1992. A trial was ultimately held regarding the parties' opposing requests on November 4, 1993. It was the decision of the trial court that appellee's counterclaim should be granted on the grounds of incompatibility. As part of the court's divorce decree and judgment entry, a shared parenting plan was implemented. Throughout the course of the next four years, the parties were involved in a multitude of legal disputes concerning such things as the children's schooling, appellant's place of residence, child support and visitation rights.
One such dispute arose on March 26, 1997, when appellant filed a motion requesting that the shared parenting plan be terminated, that she be designated sole residential parent, and that appellee be held in contempt for failing to pay certain medical expenses. Appellee responded on April 15, 1997 with a cross-motion to terminate the shared parenting plan and reallocate parental rights and responsibilities in his favor. Pursuant to appellant's request, a guardian ad litem was appointed by the trial court.
Following the completion of necessary discovery, this matter proceeded to trial to the court on July 14 and July 15, 1997. Following the completion of trial, the trial court ordered both parties to submit written closing arguments. Appellant fulfilled this request on July 25, 1997 at which time she also requested that the trial court strike the guardian ad litem's report due to alleged inconsistencies and false statements contained therein. In its entry dated August 4, 1997, the trial court chose to rely upon the guardian ad litem's report and found that it was in the best interest of the children to terminate the shared parenting plan. Additionally, appellee was designated as the sole residential parent while appellant was granted visitation rights and ordered to pay child support. It is from this decision that appellant filed a timely notice of appeal on August 22, 1997.
Appellant raises four assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE COURT ERRED IN MODIFYING THE PARTIES' SHARED PARENTING PLAN WITHOUT FINDING THERE HAD BEEN A CHANGE IN CIRCUMSTANCES."
Appellant first argues that the trial court was without authority to terminate the shared parenting plan in the case subjudice without first finding that a change in circumstances had occurred. Throughout appellant's argument in support of this proposition, appellant repeatedly refers to authority as related to the modification of parental rights and responsibilities. For instance, appellant cites to the case of Moyer v. Moyer (May 13, 1993), Franklin App. No. 93-AP-157, unreported, which stands for the proposition that a reallocation of parental rights cannot occur without a showing of a change in circumstances. Similarly, appellant cites to R.C. 3109.04 (E) (1) (a) which discusses modifying a prior decree allocating parental rights. Such authority is cited despite the fact that both parties filed motions in the trial court to terminate rather than to modify the shared parenting plan.
 A. APPLICABLE LAW
When a modification is sought in a shared parenting plan R.C.3109.04 (E) (1) (a) applies which states in relevant part as follows:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, * * * that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, * * *."
However, when one or both parties seek the termination of a shared parenting plan, R.C. 3109.04 (E) (2) (c) governs and provides:
 "(2) In addition to a modification authorized under division (E) (1) of this section:
* * *
 (c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D) (1) (a) (i) * * * (ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children."
The effect of these sections have been interpreted by a number of appellate districts which have consistently arrived at the same conclusion. In Blair v. Blair (1986), 34 Ohio App.3d 345, the Fifth District held that the modification provisions of R.C.3109.04 were not applicable in proceedings where individuals sought the termination of joint custody (now known as shared parenting). Id. at 346.
Identical conclusions have been reached by the Second, Eleventh and Twelfth Districts. For instance, in Quesenberry v.Quesenberry (Nov. 6, 1998), Champaign App. No. 98-CA-1, unreported, the Second District held a request for a termination of a shared parenting plan does not require a showing of a change in circumstances. Id. at 1. On the contrary, the trial court need only consider the best interest of the children in deciding whether the plan should be terminated. Id. Similarly, the Twelfth District held in Deimling v. Messer (Mar. 16, 1998), Clermont App. No. CA96-07-070, unreported, that R.C. 3109.04 (E) (1) (a) applies only in those instances when a modification of a shared parenting plan is being sought. Id. at 2. An analysis of whether a shared parenting plan is to be terminated only requires the consideration of the best interest of the children involved. Id. The same conclusion was reached by the Eleventh District inBrannon v. Brannon (June 27, 1997), Trumbull App. No. 96-T-5572, unreported.
 B. ANALYSIS
Although this court is aware of the fact that it is in no way bound by the unreported decisions cited above, we nonetheless find the reasoning contained therein quite persuasive. The clear wording of the applicable statutes reveals that different standards have been established for the termination as compared to the modification of a shared parenting plan. R.C. 3109.04 (E) (1) (a) only addresses those occasions when a modification is sought in the existing shared parenting plan. Notably absent from this section are any references to the complete termination of the plan. As such, this section would be applied when the parties sought to modify provisions of the plan as to the days of the week the children would spend which each parent, what school the children would attend, etc.
R.C. 3109.04 (E) (2) (c) on the other hand, applies solely to instances where an outright termination of the plan is being requested. Under this section, no mention of a change of circumstances is made. The standard which the court must look to and apply is that of the best interest of the children involved. The legislature made it clear from the language utilized in this section that termination and the best interest standard were available "[i]n addition to a modification authorized under division (E) (1) of this section." Therefore, the provisions for termination must be viewed as existing independently of those provided for modification.
As previously indicated, the parties in the case at bar filed cross-motions in the trial court regarding the shared parenting plan. While either party could have worded its motion so as to request a modification of the plan, both instead chose to ask the trial court to terminate the plan completely. Hence, R.C. 3109.04
(E) (2) (c) applies rather then section (E) (1) and the proper inquiry was the best interest of the children.
The decision of the trial court in this regards thus cannot be viewed as having been made in error. Appellant's first assignment of error is without merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "THE COURT ERRED IN FAILING TO STRIKE THE GUARDIAN AD LITEM'S REPORT AND ORDER A NEW REPORT."
Appellant next argues that the trial court erred in failing to strike the guardian ad litem's report when such was moved for on July 25, 1997. It is first asserted that the report should have been stricken from the record as it was presented to counsel only minutes before the guardian ad litem took the stand. Appellant further argues that the report is replete with errors and inaccuracies which should justify the appointing of another guardian ad litem.
A thorough review of the transcript however, reveals that appellant failed to object at any point in the proceedings as to the guardian ad litem's report. Although counsel for appellant indicates in his reply brief that he objected to the timing of the report, he fails to comply with App. R. 16 (D) and reference the transcript page at which said objection was made. Furthermore, this court's thorough review of the 400+ pages of transcript fails to locate any such objection by appellant. While it is asserted that the report was received only minutes before the guardian ad litem took the stand, appellant failed to request any additional time to review the contents of the report. On the contrary, counsel for appellant proceeded with cross-examination of the guardian ad litem regarding her findings. Once questioning of the guardian ad litem was completed, counsel for appellant continued to call additional witnesses. At the point appellant concluded with the calling of witnesses, counsel for appellant made the following statement to the court:
 "Your Honor, at this time we move for admission of our exhibits. Rest subject to possible rebuttal." (Tr. at 359).
It was only on July 25, 1997, ten days after the trial had been concluded, that appellant attempted to have the guardian adlitem's report excluded from consideration via her motion to strike. It has long been the rule that in the event a party does not call an error to the attention of the trial court at such time when the error could be avoided or corrected, such error will not be considered on appeal. LeFort v. Century 21-MaitlandRealty Co. (1987), 32 Ohio St.3d 121, 123 citing Stores RealtyCo. v. Cleveland (1977), 41 Ohio St.2d 41. This court has followed this precedent on multiple occasions where we have held that an appellant waived an error on appeal when he did not properly object at the trial level. See Klein v. Dietz (Dec. 16, 1998), Mahoning App. No. 95-CA-47, unreported and State v. Hopson
(Dec. 22, 1994), Mahoning App. No. 91-CA-43, unreported.
Due to appellant's failure to object on the record upon receiving the report or during the questioning of the guardian adlitem, any error in the admission of the report has been waived. Appellant had ample opportunity to request additional time to review the report or to object to its admission on grounds of timeliness and/or inadequacy. As such, appellant's second assignment of error is without merit.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error reads:
 "THE COURT ABUSED ITS DISCRETION WHEN THE JUDGE LIMITED THE NUMBER OF WITNESSES THE APPELLANT MAY CALL."
In appellant's third assignment of error, it is alleged that at some point during the proceedings the trial judge made the decision to limit the number of witnesses from which testimony would be taken. Appellant indicates that counsel for both parties were called to the bench on the second day of trial and the trial judge advised counsel for appellant that she did not wish to hear from any of appellant's additional witnesses. It is appellant's position that this conversation does not appear on the record as the trial judge instructed the court stenographer to stop typing when the sidebar was called. Other than counsel's statements concerning this occurrence, the record is devoid of any evidence that any such actions were taken by the trial judge.
Counsel for appellee responds to this assignment of error by asserting that the events alleged by appellant never occurred. Counsel indicates that the reason the record does not reflect any action by the trial court to limit the number of witnesses is because no such discussion took place.
As with appellant's second assignment of error, the record is devoid of any evidence in support of appellant's contention. Although counsel for appellant asserts that he was not aware at the time that the trial court had instructed the court stenographer to stop typing, this ignorance is not excusable. It is clearly the duty of counsel to request and ensure that all sidebar conferences are recorded by the court stenographer. Statev. Goodwin (1999), 84 Ohio St.3d 331, 340 citing State v. Grant
(1993), 67 Ohio St.3d 465, 481. The failure to create a record of these proceedings results in the waiver of any alleged error. Id.
It concerns this court that it has been presented with a scenario such as this in which counsel for appellant insists certain events transpired while counsel for appellee is adamant that nothing of the sort occurred. Obviously this court is faced with a situation whereby counsel for one of the parties is being less than honest despite his duty to comply with the Code of Professional Responsibility. While this court is not in a position to determine which party is providing this court with false information, we would strongly urge appellant's counsel to create a record of all proceedings in the future. Counsel has an affirmative duty to ensure that all sidebar conferences are recorded by the stenographer. Id. Additionally, in a situation such as the one presented, counsel could have availed himself of Evid.R. 103 (A) (2) and proffered the testimony of the witnesses which the trial court was not permitting to testify. Having failed to create any record of this alleged activity by the trial judge, this court is left with no option but to hold that appellant waived any error which may have occurred.
Accordingly, appellant's third assignment of error is determined to lack merit.
 V. ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error reads:
 "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SHOW CAUSE."
In appellant's final assignment of error, it is argued that the trial court erred when it determined that appellant had failed to provide proper support for its show cause motion. Appellant asserts that proper documentation was before the court to establish that appellee failed to pay certain medical expenses as required by a prior court order. The trial court's failure to grant appellant's motion is alleged to result in an abuse of discretion and is thought to support appellant's contention that the trial court had a "secret agenda" in the case at bar.
 A. APPLICABLE LAW
Civil contempt has been defined as that which exists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party. Windham Bank v. Tomaszczyk
(1971), 27 Ohio St.2d 55, 58; Pedone v. Pedone (1983), 11 Ohio App.3d 164,165. Proof of intent to violate the court order is not a pre-requisite to a finding of contempt. Pugh v. Pugh
(1984), 15 Ohio St.3d 136, 140. However in order to make a finding of contempt, the evidence produced must be clear and convincing. In re Ayer (1997), 119 Ohio App.3d 571, 575 citingPugh, supra; ConTex, Inc. v. Consolidated Technologies, Inc.
(1988), 40 Ohio App.3d 94, 95. Clear and convincing evidence has been defined as the measure of proof which is more than a mere preponderance of the evidence but less than the extent of such certainty as is required beyond a reasonable doubt in criminal cases and which would provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122.
 B. ANALYSIS
A review of the record reveals that the trial court correctly found that insufficient evidence was provided regarding the motion to show cause. Appellant's motion to show cause was filed pursuant to an alleged failure by appellee to follow the dictates of the parties' shared parenting plan as related to the payment of medical expenses. The relevant sections of this plan state as follows:
 "(E) The reasonably necessary uncovered medical, dental, optical, hospital, medication and other such expenses not paid by insurance shall be paid as follows: The first $100.00 per year per child by Mother and the balance to Father.
 (F) Except in an emergency situation, the children shall be treated by the medical providers selected by the Residential Parent, unless the Father shall select the medical provider required by his health coverage."
As is clear from the language of these sections, appellee is responsible only for those medical expenses not paid by insurance. Furthermore, appellant must first pay the initial $100 of expenses for each child before appellee's obligation begins. An additional condition upon appellant's obligation to pay is that any medical expense must be shown to be reasonably necessary. Finally, in the absence of an emergency situation, appellee may require that the medical provider attended by the children be one which participates in appellee's health coverage program. Appellant has failed to provide clear and convincing evidence which would establish that appellee did not meet his court ordered obligation and thus was in contempt.
Although appellant provided the trial court charts in an attempt to illustrate appellee's contemptuous activity, through the cross-examination of appellant it was revealed that said charts were less than reliable. First, the testimony provided in addition to the charts fails to reveal that the medical expenses incurred were "reasonably necessary" as required by the shared parenting plan. The failure to provide proof of this vital prerequisite in and of itself would be sufficient to overcome appellant's contempt claim.
In addition to this oversight, appellant admits during cross-examination that some of the bills itemized on the charts were from providers which were not part of appellee's approved list of providers. In that appellant failed to show that these services were emergency in nature, appellee clearly cannot be found in contempt for not paying these expenses. Despite the inclusion of these bills on the charts provided as support for the contempt action, appellant admits that it was her responsibility to pay these expenses. Appellant provides further damaging testimony on numerous occasions indicating that either she was not aware of what the insurance company had paid on certain bills or if in fact appellee had already paid the outstanding expense in full. Such statements call into question the reliability of the charts which were appellant's primary support for the motion to show cause.
One of numerous examples of appellant's testimony which this court could cite is as follows:
 "Q: You talked about how you set up this chart to show how much you paid, how much you had owed, how much was covered by insurance?
A: Right.
 Q: That was one of the areas you testified to yesterday, isn't that correct?
 A: And I believe I said there were certain times I didn't know what the insurance had paid." (Tr. at 288-289).
Based upon these statements which serve to undermine any probative value which appellant's charts may have had, it cannot be held that the trial court was presented with clear and convincing evidence to find appellee in contempt. The evidence provided by appellant is suspect at best and fails to establish with any measure of reliability to what extent if any appellee was deficient in meeting his court ordered duties.
Having failed to meet her burden of proof, this court must conclude that appellant's fourth assignment of error is also without merit.
For the foregoing reasons, the decision of the trial court is hereby affirmed.
Cox, P.J., concurs.
Waite, J., concurs.
APPROVED:
 ___________________________ JOSEPH J. VUKOVICH, JUDGE