OPINION
Defendant-appellant, Gregory R. Miller, appeals his conviction in the Butler County Court of Common Pleas for possession of cocaine in violation of R.C. 2925.11(A).
On February 17, 1997, employees at the Tri-County Inn discovered a package they believed contained illegal drugs. The manager phoned Butler County Sheriff Deputy Ron Axt, who tested the substance and found that it was cocaine. After an investigation, Deputy Axt determined that appellant had been staying in the motel room where the cocaine was found and that the motel employees had observed appellant behaving in a strange manner before leaving the motel.
Deputy Axt issued a warrant for appellant's arrest on February 27, 1997. The U.S. Marshal's Office contacted Deputy Axt on March 11, 1997 and informed him that appellant had been arrested by federal authorities in Atlanta, Georgia for a parole violation. Deputy Axt told the U.S. Marshal's Office that Butler County had an active warrant for appellant's arrest. The U.S. Marshal's Office stated that appellant was being held on a parole violation, that they did not know how long the process would take, and that they would notify Deputy Axt when appellant was available. Deputy Axt placed a holder on appellant to officially notify the federal authorities of the active warrant and contacted them several times to check on appellant's status.
On February 26, 1998, appellant was stopped by the Cincinnati police, arrested on the outstanding warrant, and transferred to the Butler County Jail. At the time, appellant was in federal custody and living in a halfway house in Cincinnati. He was scheduled to be paroled on March 5, 1998. Appellant posted bond on March 9, 1998 and was released back into the custody of U.S. Marshals. He was taken back to the halfway house, where he remained in federal custody. On April 21, 1998, the Butler County Grand Jury indicted appellant on the possession of cocaine charge. On June 9, 1998, a holder was placed on appellant by the Butler County Sheriff's Office. The holder notified the federal authorities of the outstanding charges and that they were to notify Butler County when appellant was available for transport.
The federal authorities charged appellant with escape from the halfway house as a result of his arrest on the outstanding Butler County warrant. His parole date was cancelled and he was held in federal custody to answer the escape charges. On April 2, 1998, appellant was transferred from the halfway house to federal custody in the Boone County, Kentucky jail. On May 28, he was transferred to the Federal Correctional Facility ("FCI") in Manchester, Kentucky. On August 26, he was taken to Lexington, Kentucky for a parole hearing. The parole hearing was held on August 27, 1998, and his parole was revoked. On October 16, 1998, appellant was transferred back to Manchester to serve a thirty-six month sentence.
On November 2, 1998, appellant received a notification letter from the federal authorities stating that a detainer had been filed against him by Butler County and advising him of his rights under the Interstate Agreement on Detainers ("IAD"). Appellant filed the paperwork to assert his right to a speedy trial under the IAD. The request was received by the Butler County Prosecutor's Office on December 3, 1998. On January 13, 1999, appellant was released from the FCI in Manchester into custody of the Butler County Sheriff's Office.
On January 29, 1999, appellant filed a pro se motion to dismiss the indictment due to a violation of his right to a speedy trial. On February 5, 1999, appellant's counsel withdrew and the trial court appointed counsel to represent appellant. The trial court held a hearing on the motion to dismiss on March 5, 1999. Counsel for both sides filed supplemental memoranda on the motion to dismiss for a speedy trial violation. The trial court orally denied the motion on April 2, 1999 and an entry reflecting the decision was filed on April 5, 1999.
A jury trial was held April 12 and 13, 1999. The jury returned a guilty verdict on April 14, 1999. Appellant was sentenced to eight months in prison, a $1,000 fine, and suspension of his driving privileges.
Appellant appeals the denial of his motion to dismiss, his conviction, and his sentence. He raises five assignments of error.
Assignment of Error No. 1:
 APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED WHICH REQUIRES VACATION OF HIS CONVICTION.
In his first assignment of error, appellant contends that the trial court should have granted his motion to dismiss due to a violation of his right to a speedy trial. Appellant first argues that his statutory right to a speedy trial was violated.
Appellant was arrested on February 26, 1998, but was not brought to trial until April 12, 1999. According to R.C. 2945.71, the state had two hundred and seventy days after appellant's arrest to bring him to trial. R.C. 2945.71(C)(2). Time begins to run from the date of the arrest; however, the day of arrest itself is not counted when computing the statutory time period. State v.Stewart (Sept. 21, 1998), Warren App. No. CA98-03-021, unreported, at 2.
Appellant was arrested on February 26, 1998. Not counting the day of arrest, appellant was in the Butler County Jail for eleven days until he posted bail. The parties agree that according to R.C. 2945.71(E) these days should be tripled.[1] Therefore, thirty-three days are chargeable against the state for this period.
From March 9, 1998 until January 13, 1999, appellant was in federal custody. The time requirements set forth in R.C. 2945.71
are subject to the extensions in R.C. 2945.72. This section states that time an accused must be brought to trial is extended for:
 [a]ny period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability.
R.C. 2945.72(A). A defendant who is in federal custody is "unavailable" for trial and the time spent in the custody of federal authorities tolls the speedy trial time requirement. State v.Howard (1992), 79 Ohio App.3d 705, 707-708. However, the state must use due diligence to secure the availability of a defendant who is in federal custody. Id.; State v. Pickens, July 1, 1983, 1983 Ohio App. Lexis 14880 at *5-6, Erie Co. App. No. E-83-4, unreported.
The trial court found that the state used reasonable diligence to secure appellant's availability and that speedy trial time was tolled while appellant was in federal custody. Appellant argues that the time he was in federal custody should have counted against the state because the state was aware that he was in federal custody and could have used the IAD to bring him back to answer the charges.
We agree with the trial court's determination the state used reasonable diligence to secure appellant's availability. The record contains evidence that the state took steps to secure appellant's appearance by issuing a holder and detainer and instructing federal authorities of the necessity that appellant appear in Butler County to answer charges against him. The record also shows that appellant was being held by the federal authorities for further proceedings. Appellant stated that he was being held on charges of escape from the halfway house and his parole was revoked until a further hearing. Appellant testified that he paid the Butler County bail money because he hoped that he could go back into federal custody and resolve the matter and have his parole reinstated. Appellant was moved to several different locations by federal authorities. When appellant's parole hearing was completed and he was transferred to Manchester to serve his federal sentence, federal authorities notified him of his rights under the IAD. Once appellant filed his speedy trial request pursuant to the IAD, the state immediately took the required steps to have appellant transferred to Butler County. Under the facts of this case, the state used reasonable diligence to secure appellant's availability.
We disagree with appellant's argument that the federal incarceration time should be counted against the state because the state had the ability to file a request under the IAD to have appellant transferred to Butler County. As mentioned above, the evidence indicates that federal authorities were holding appellant until the issue of the escape charges and his parole could be determined. Deputy Axt testified that he was in contact with federal authorities and that the hearing was cancelled and delayed several times. We have determined that under the circumstances of this case the state used reasonable diligence. While the IAD procedures are available to the state and should be used where appropriate, the state was not required to utilize these procedures under the facts of this case.
Appellant was returned to the custody of Butler County on January 13, 1999. He filed a motion to dismiss the charges on January 29, 1999, which pursuant to R.C. 2945.72(E)[2] tolled the time for speedy trial purposes. These seventeen days are also counted against the state. Adding the thirty-three days discussed above to this time, the state was within the two hundred seventy day requirement. As such, we find the trial court did not err in finding that the state complied with the speedy trial statute.
Appellant next argues that the trial court erred by finding that the state did not violate appellant's constitutional right to a speedy trial. The right to a speedy trial in a criminal prosecution is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and by Article One, Section Ten of the Ohio Constitution. The United States Supreme Court has set forth a four-factor balancing test to determine when the right to a speedy trial has been denied. Barker v. Wingo (1972),407 U.S. 514, 523, 92 S.Ct. 2182, 2188. The court should consider the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. Id. These factors should be considered along with any other relevant circumstances. Id. at 533, 92 S.Ct. at 2193.
In this case, the delay was caused by appellant's incarceration by federal authorities. When appellant requested a speedy trial pursuant to the IAD, the state responded quickly. The trial court found that if there was any prejudice due to the delay, the prejudice was to the state, due to the loss of memory by its witnesses. Balancing the four factors above, we find that appellant was not denied his constitutional right to a speedy trial.
Appellant also contends that he was denied due process by the delay between the date of his offense and his indictment. In order to find a violation of a defendant's due process caused by delay, the court must apply a two-step inquiry. First, the defendant must demonstrate that he was prejudiced by the delay. Second, the reason for the delay must be weighed against the prejudice. State v. Whiting (1998), 84 Ohio St.3d 215, 217.
The reason for the delay between the police investigation and the indictment was that appellant left the Tri-County Inn in February 1997 and drove directly to Georgia, where he was arrested by federal authorities on a parole violation. Deputy Axt was in contact with the federal authorities several times in an attempt to determine when appellant would be available for questioning in Butler County.
The trial court found no evidence that appellant was prejudiced by the delay in this case. The only evidence the trial court found relevant to prejudice was the defendant's self-serving statement that the delay prejudiced him in his defense of the charges. Appellant argues that he suffered anxiety over the charges and his federal parole. However, appellant has not established that the delay prejudiced his ability to defend against the charges. We find appellant has failed to show he was prejudiced as a result of the delay. As we have found that appellant was neither denied his statutory right to a speedy trial nor his constitutional right to a speedy trial, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE EVIDENCE WAS INSUFFICIENT TO CONVICT FOR POSSESSION OF COCAINE.
In his second assignment of error, appellant contends that the evidence was insufficient to convict him for possession of cocaine. Specifically, appellant argues that the evidence was insufficient to establish that the drugs were in his possession. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Goodwin (1999),84 Ohio St.3d 331, 343-44.
Appellant was convicted of R.C. 2925.11(A), which states "[n]o person shall knowingly obtain, possess, or use a controlled substance." According to the Ohio Revised Code, possession is "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." R.C.2901.21(C)(1). The Revised Code provides a definition of possession within the context of drug offenses:
 "Possess" or "possession" means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
R.C. 2925.01(K). Possession may be actual or constructive.State v. Wolery (1976), 46 Ohio St.2d 316, 329. Constructive possession requires a showing of "conscious possession" or that the defendant "had knowledge that the subject property was on the premises." State v. Hankerson (1982), 70 Ohio St.2d 87,91.
After a thorough review of the record, we find sufficient evidence to convince a reasonable person that appellant had knowledge and control over the cocaine found in his motel room. The evidence establishes that appellant was the only person in the hotel room and that the cocaine was found in a towel in the bathroom shortly after appellant left the motel.
There is also evidence that appellant was acting in a strange and nervous manner. He taped over the smoke detector in his motel room and accused the maintenance man of going through his possessions. Appellant was acting in such a strange and nervous manner that the maintenance man took another employee with him the second time he was called to appellant's room. Appellant called the front desk to report something missing from his room, although he would not state what the missing object was, describing it only as a "personal item." The evidence also shows that appellant was in a hurry to leave the motel and did not bother to check out or return a rented VCR to the front desk. As there is sufficient evidence from which a reasonable person could infer that appellant fulfilled the definition of possession of cocaine, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,389. The standard for reversal of a verdict which is against the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
We find appellant's conviction is not against the manifest weight of the evidence. As mentioned in the previous assignment of error, there was evidence that appellant was the only person in the motel room, that he claimed something was missing, and that he was acting in a strange manner. Appellant argues that there are inconsistencies between the testimony of the maintenance man, who said there were dirty towels on the motel room floor, and the housekeeper who said that the towels were all clean on the rack. The housekeeper was also unsure of whether the cocaine was found in room one hundred five or in one hundred six.
Although there are some inconsistencies, the evidence establishes that the cocaine was found in appellant's room. Although the housekeeper was not totally positive of the room number, the maintenance man was positive it was room one hundred six, appellant's room. The housekeeper was reasonably sure it was room one hundred six, but that possibly it was room one hundred five. The maintenance man testified that the housekeeper came out of room one hundred six with a towel containing the cocaine in it and asked him what the substance was. The testimony in this case occurred over two years after the date the drugs were found, and the evidence supports the conclusion that the cocaine was found in appellant's room. After a thorough review of the record, we find appellant's conviction was not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 COUNSEL WAS INEFFECTIVE BY FAILING TO SAFEGUARD APPELLANT'S RIGHT TO A SPEEDY TRIAL.
To decide appellant's claim of ineffective assistance of counsel, we must apply the two-tier test of Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellant must show that he was prejudiced as a result of counsel's actions. Id. at 689. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,143, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
Appellant argues that counsel was ineffective for failing to protect his speedy trial rights. In June 1998, appellant sent a letter requesting his retained counsel to file a request for a speedy trial, which counsel did not do. At the time of the request, appellant was in federal custody and awaiting his parole hearing. The record indicates that appellant's counsel filed a motion for discovery and a bill of particulars and was attempting to negotiate a plea during this time. We have already determined that appellant was not denied his right to a speedy trial and was not prejudiced by the delay. No evidence exists to indicate that appellant was prejudiced by counsel's failure to file a request for a speedy trial or that the result of the trial would have been different. Appellant's fourth assignment of error is overruled.
Assignment of Error No. 5:
THE COURT ERRED IN IMPOSING A FINE UPON APPELLANT.
 In his final assignment of error, appellant contends that the court erred by imposing a $1,000 fine on him because he is indigent. Appellant argues that the court was aware that he is indigent and appointed counsel to represent him. He also argues that his earning ability has been affected as a result of his incarceration by federal authorities for several years.
Appellant's argument fails to consider the difference between a finding of indigency for purposes of appointing counsel and a finding of indigency to avoid having to pay a fine. The fact that a court finds a defendant indigent does not decisively establish that a defendant is unable to pay a fine. State v. Powell (1992),78 Ohio App.3d 784, 789. A defendant must show both that he is indigent and that he is unable to pay a fine. State v. Gipson
(1998), 80 Ohio St.3d 626, 636. The determination of whether a defendant is able to pay encompasses other factors, such as a future ability to pay. Id. Because there is no evidence that appellant is unable to pay a fine, we find no error in the trial court's imposition of the $1,000 fine. Appellant's fifth assignment of error is overruled.
 ________________________ WALSH, J.
YOUNG, P.J., and VALEN, J., concur.
[1] R.C. 2945.71(E) states: "For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charges shall be counted as three days."
[2] R.C. 2945.72(E) states that speedy trial time is extended by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused."