DECISION.
On January 28, 1995, two gunmen entered the home of Paul Saturday, demanded money, and then shot him in front of his girlfriend, Shawanna Ogletree, and her child. After the shooting, the men fled from the apartment. Ogletree later identified defendant-appellant Michael Larkin and another man as the killers. Both men were indicted for aggravated murder.
Following a jury trial in June 2000, Larkin was convicted of murder pursuant to R.C. 2903.02(A), as well as a gun specification. In this appeal, Larkin raises six assignments of error, none of which we find to be well taken.
 I. Procedural History
This is the fourth time that we have reviewed this case. In May 1995, after a bench trial, the trial court found Larkin guilty of aggravated murder. Before sentencing, Larkin filed a motion for a new trial pursuant to Crim.R. 33. Larkin's motion alleged three grounds: (1) newly discovered evidence, (2) insufficient evidence to support the finding of guilt, and (3) denial of his right to a jury trial. The trial court granted Larkin's motion on the basis of newly discovered evidence, but did not rule on the other two grounds asserted in the motion.
On appeal, this court held that the trial court had erred in granting the motion for a new trial because the alleged newly discovered evidence did not meet the requirements of State v. Petro (1947), 148 Ohio St. 505,76 N.E.2d 370. We remanded the case to the trial court to consider the other two grounds asserted in Larkin's motion.[1] On remand, the trial court overruled the motion for a new trial on those other two grounds in September 1996.
Larkin then filed a second motion for a new trial based upon a different claim of newly discovered evidence. In February 1997, the trial court granted Larkin's request to withdraw the second motion. Thirty days later, Larkin filed a notice of appeal stating that he was appealing the judgments entered in September 1996 and February 1997. We sua sponte
dismissed Larkin's appeal because the latter judgment was not a final order as defined in R.C. 2505.02, and because we were without jurisdiction to consider Larkin's untimely appeal of the September 1996 judgment.[2]
In September 1998, Larkin filed a motion for leave to appeal, citing the negligence of his previous counsel. We held that Larkin had been prejudiced by the deficient performance of his trial counsel, so we reversed the judgment of the trial court and remanded the case for a new trial.[3] This appeal followed Larkin's conviction for murder after a jury found him guilty of the lesser-included offense.
 II. Assignments of Error
In his first assignment of error, Larkin alleges that he was denied effective assistance of trial counsel. Specifically, he argues that his trial attorneys' performance fell below the level of constitutionally required competence, when, on cross-examination, counsel failed to use the prior sworn testimony of the state's eyewitness, Shawanna Ogletree, to impeach her credibility.[4]
In order to demonstrate ineffective assistance of counsel, Larkin must show (1) that his trial attorneys' performance was so deficient that it violated a substantial duty, and (2) that he was prejudiced by the deficient performance.[5] In order to establish prejudice, Larkin must show that his trial attorneys' errors were "so serious as to deprive [him] of a fair trial, a trial whose result is reliable."[6]
Our review of the record indicates that the eyewitness's trial testimony was remarkably consistent with her earlier testimony despite a span of five and a half years from the murder. Furthermore, cross-examination explored all areas of Ogletree's testimony in a thorough and aggressive manner. We hold that there were no acts or omissions by trial counsel that deprived Larkin of a substantive or procedural right, or that rendered the trial fundamentally unfair.[7]
Accordingly, we overrule Larkin's first assignment of error.
In his second assignment of error, Larkin contends that he was deprived of a fair trial by the misconduct of the prosecutor. The test for whether prosecutorial misconduct mandates reversal is whether remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the accused.[8] The central element of prosecutorial-misconduct analysis is "whether the conduct complained of deprived the defendant of a fair trial."[9]
Larkin alleges that he was prejudiced when, during voir dire and opening statement, the prosecutor said that he would call Larkin's cellmate, Antonio Carr, to testify. In opening statement, the prosecutor indicated that Carr would testify that Larkin had admitted to being involved in the murder. Larkin complains that he was prejudiced because Carr never appeared at trial.
Our review of the record indicates that Carr's failure to appear at trial was not due to any action by the prosecutor. Larkin's trial had begun on Monday, June 12, 2000. The prosecutor had subpoenaed Carr and had telephoned Carr at his "lower Kentucky" home to arrange for Carr's appearance on Tuesday morning. When Carr failed to appear at that time, the prosecutor called Carr again. Carr told him that he had no transportation, so the prosecutor offered to have a police officer drive to Kentucky to pick him up. On Wednesday morning, the prosecutor told the court that the officer had traveled to Carr's home, but that Carr had refused to accompany the officer. Despite his efforts to obtain Carr's presence, the prosecutor was forced to rest his case without the benefit of Carr's testimony. On the facts of this case, the prosecutor's comments in voir dire and in opening statement about Carr's potential testimony were entirely proper.
As further support for his allegation of prosecutorial misconduct, Larkin notes various actions by the prosecutor that he claims were "not within the boundaries of acceptable behavior." But Larkin has failed to provide any context for the incidents or to explain how they prejudiced him in any way. On this record, we are not persuaded that any statements or actions of the prosecutor prejudicially affected Larkin's substantial rights. Therefore, we overrule Larkin's second assignment of error.
In his third assignment of error, Larkin claims that the trial court should not have instructed the jury on murder, a lesser-included offense of aggravated murder. Because Larkin did not object to the instruction at trial, he has waived all but plain error.[10]
In this case, we hold that the trial court properly gave the jury an instruction on the lesser-included offense because the evidence presented at trial reasonably supported both an acquittal on the charged offense of aggravated murder and a conviction on the lesser-included offense of murder.[11] The jury reasonably could have found that the killing was purposeful, while concluding that the act was not committed with prior calculation and design. We overrule Larkin's third assignment of error.
In his fourth and fifth assignments of error, Larkin challenges the sufficiency and the weight of the evidence. In his sixth assignment of error, Larkin argues that the trial court erred by overruling his Crim.R. 29 motion for acquittal. We address these assignments of error collectively.
When the evidence is reviewed in a light most favorable to the state, a rational trier of fact could have found that Larkin had purposely caused the death of Paul Saturday.[12] The eyewitness's identification of Larkin as Saturday's killer was, if believed, sufficient evidence to support the murder conviction. We further conclude that the trial court did not err in denying Larkin's Crim.R. 29 motion because the evidence was such that reasonable minds could reach different conclusions as to whether each element of the offense had been proved beyond a reasonable doubt.[13]
Although Larkin claims that the testimony of the state's eyewitness was incredible, the jury was entitled to "believe or [to] disbelieve any witness or accept part of what a witness says and reject the rest."[14]
After reviewing the record, we cannot say that the jury lost its way or created such a manifest miscarriage of justice that a new trial is required.[15]
Therefore, we overrule Larkin's fourth, fifth, and sixth assignments of error, and affirm the judgment of the trial court.
 ______________________ Winkler, Judge.
 Hildebrandt, P.J., and Painter, J., concur.
[1] State v. Larkin (1996), 111 Ohio App.3d 516, 676 N.E.2d 906.
[2] State v. Larkin (Sept. 25, 1998), Hamilton App. No. C-970255, unreported.
[3] State v. Larkin (May 26, 1999), Hamilton App. No. C-980797, unreported.
[4] We note that Larkin's appellate counsel also represented Larkin at trial, along with co-counsel.
[5] State v. Bradley (1980), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258; Lockhart v.Fretwell (1993), 506 U.S. 364, 113 S.Ct. 838; State v. Powell (1993),90 Ohio App.3d 260, 629 N.E.2d 13.
[6] Fretwell, supra, at 369, 113 S.Ct. 842-843, citing Stricklandv. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064.
[7] See Fretwell, supra; Strickland, supra.
[8] See State v. Bey (1999), 85 Ohio St.3d 487, 493, 709 N.E.2d 484,493.
[9] State v. Fears (1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136,143, citing State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394, 400.
[10] See State v. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus; State v. Jalowiec (2001), 91 Ohio St.3d 220, 234, 744 N.E.2d 163,178.
[11] See State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of syllabus; State v. Goodwin (1999), 84 Ohio St.3d 331,345, 703 N.E.2d 1251, 1264.
[12] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of syllabus.
[13] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[14] See State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548,553.
[15] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720.