OPINION
{¶ 1} Defendant-appellant Antravene T. Cash ("appellant") appeals from his conviction for one count of complicity to aggravated robbery with a firearm specification and one count of possession of cocaine by the Ashtabula County Court of Common Pleas.
 {¶ 2} On February 8, 2001, the Grand Jury of Ashtabula County indicted appellant for one count of complicity to commit aggravated robbery with a firearm specification, a first-degree felony, and one count of possession of cocaine, a felony of the fifth degree.
 {¶ 3} The following evidence was adduced at trial. On January 9, 2001, Vivian Benedict opened her small grocery store located on Station Avenue in Ashtabula at 9:00 a.m. Benedict noticed two black males standing across the street as she opened the store. Shortly after 9:00, appellant entered the store and purchased a small cigar. Appellant had to search his pockets to obtain the fifty cents needed to buy the cigar.
 {¶ 4} Ten to fifteen minutes later, the door to the store burst open. George Bishop entered holding a sawed-off shotgun while screaming "This is a robbery." Bishop held a gun to Benedict's head, threatening to kill her. Following Benedict's instructions, a friend who was in the store opened the cash register. Bishop grabbed the money and threw the change drawer to the floor before leaving the store. Benedict immediately contacted the police, who responded within minutes.
 {¶ 5} Benedict told the police two suspects were involved. The police, acting upon a description of the suspects, soon stopped a city cab in which appellant and Bishop were passengers. Money from the robbery, identified by a mark on one of the bills, was discovered in Bishop's possession. Police found appellant had a small amount of crack cocaine, a blue bandana such as that worn by the robber, and $23 in his possession. Appellant denied knowing Bishop, claiming to have met up with Bishop about fifteen minutes earlier.
 {¶ 6} Appellant later said Bishop gave him the $23 for using a phone at the home of a cousin of appellant. Appellant subsequently admitted to being with Bishop at his cousin's residence that morning, after meeting him on the street. Appellant stated he was with Bishop when Bishop crossed the street and entered the store. When Bishop ran from the store, appellant saw the butt of a gun sticking out of Bishop's pants. Appellant claimed he took Bishop to his cousin's apartment because he felt threatened. Appellant stated he tried to break away from Bishop, but Bishop caught up with him. Appellant called a cab, upon Bishop's instructions. Both men left in the cab.
 {¶ 7} The police discovered the shotgun behind a garage near the residence of appellant's relative. Pablo Sanchez testified that two men ran into the backyard. He saw one man throw a gun behind the house while the other man watched.
 {¶ 8} Bishop testified that he owed appellant some money from a drug purchase. Appellant took Bishop to an apartment where he showed Bishop a shotgun. Appellant asked Bishop if he had ever robbed a store. Appellant told Bishop to rob the small grocery store on Station Avenue. Appellant returned the shotgun to the apartment closet and the two walked to the grocery store. Appellant entered to buy a cigar with the purpose of determining if there was money in the register. The men returned to the apartment, where appellant gave Bishop the shotgun and a blue bandana. They returned to the area of the store. Appellant stayed across the street both to act as lookout and to make sure that Bishop robbed the store. Following the robbery, Bishop ran to where appellant was and they went to the apartment of appellant's cousin. Bishop first placed the gun in the back of a garage, upon appellant's instructions. Appellant called a cab from the apartment. Bishop stated he gave appellant about $30 from the money to pay for the cab. The two were arrested shortly after police stopped the cab.
 {¶ 9} Appellant denied any knowledge of the robbery. Appellant testified he encountered Bishop that morning on the street. They went to the apartment of appellant's cousin where appellant made a phone call. The men left and Bishop broke off from appellant. Appellant saw Bishop lean against a barbershop, located adjacent to the grocery store. Bishop then entered the grocery store, only to run out minutes later. Bishop grabbed appellant's jacket, and stated he needed to use the phone at appellant's cousin's home again. Appellant noticed a shotgun butt protruding from Bishop's pants. Appellant tried to run away from Bishop. Bishop caught up with appellant behind a house next to his cousin's apartment. Bishop held the shotgun and stated it didn't have to be like this. Appellant thought Bishop might shoot him. Appellant refused to take Bishop to his cousin's apartment as long as Bishop had the gun. Bishop placed the gun behind the garage. Appellant admitted he called the cab and left with Bishop. Bishop gave appellant the money while they were at his cousin's apartment.
 {¶ 10} The jury convicted appellant of complicity to aggravated robbery, with a gun specification, and possession of cocaine. Appellant has timely appealed from that conviction.
 {¶ 11} Appellant assigns the following errors for review:
 {¶ 12} "[1.] The defendant-appellant's constitutional rights to due process under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were prejudiced by the ineffective assistance of counsel.
 {¶ 13} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} In his first assignment of error, appellant contends his counsel was ineffective because the attorney did not object to numerous instances of hearsay elicited by the state during direct examination. Appellant submits that defense counsel's failure to object cannot be justified as a tactical decision. Appellant focuses on hearsay testimony concerning statements given to the police by Bishop that incriminated appellant.
 {¶ 15} To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. State v.Goodwin, 84 Ohio St.3d 331, 1999-Ohio-356, quoting Strickland v.Washington (1984), 466 U.S. 668, 687. A Sixth Amendment violation does not occur unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Bradley
(1989), 42 Ohio St.3d 136, 142. To establish prejudice, a defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id. at paragraph three of the syllabus.
 {¶ 16} Upon review of counsel's performance at trial, there is a strong presumption that defense counsel's actions were part of a valid trial strategy. An attorney can pursue numerous avenues in providing effective assistance of counsel. Even debatable trial strategies do not constitute ineffective assistance of counsel. State v. Maldondo, 9th Dist. No. 01CA007924, 2002-Ohio-2205, 2002 Ohio App. LEXIS 2214.
 {¶ 17} Generally, the failure to make objections during trial does not constitute ineffective assistance of counsel per se, as the failure may be a tactical decision. See State v. Gumm, 73 Ohio St.3d 413,1995-Ohio-24. The failure to object alone is not enough to sustain a claim of ineffective assistance of counsel. Objections tend to disrupt the flow of a trial and are considered technical and bothersome by a jury, causing an attorney to reasonably hesitate to object. State v.Wright, 11th Dist. No. 2000-P-0128, 2002-Ohio-1432, 2002 Ohio App. LEXIS 1497.
 {¶ 18} To bolster his contention that he received ineffective assistance of counsel, appellant relies upon the trial court's questioning of defense counsel at a sidebar conference regarding potential hearsay testimony. During the sidebar conference, the trial court noted that the testimony of a previous police officer, regarding a statement made by Bishop, probably was inadmissible and now a second police officer was going to testify further about statements made by Bishop. Defense counsel stated he would begin objecting to any further testimony along those lines. The court informed the prosecutor that there would be no further testimony as to what Bishop said in his statements to police until after Bishop testified.
 {¶ 19} A review of the testimony adduced at trial shows that one police officer testified regarding Bishop's statements implicating appellant in the robbery. The testimony clearly was hearsay to which defense counsel did not object. See Evid.R. 801(C). However, even if appellant's attorney was deficient for not objecting, appellant still must demonstrate that there is a reasonable probability that, but for this error, the result of the trial would have been different.
 {¶ 20} Bishop testified during the trial, allowing appellant an opportunity to cross-examine him and challenge his claim that appellant was involved in the robbery. Any objection by defense counsel to the hearsay evidence would have served little practical purpose. See Statev. Jefferson, 2nd Dist. No. 2002 CA 26, 2002-Ohio-6377, 2002 Ohio App. LEXIS 6247. Appellant cannot demonstrate that the result of his trial would have been different; in other words, that the jury would have acquitted him, but for the failure to object to the hearsay testimony. Bishop later testified, giving appellant the chance to question him about his statements. Appellant's first assignment of error is overruled.
 {¶ 21} Appellant's second assignment of error challenges the weight of the evidence supporting his conviction for complicity to aggravated robbery. Appellant submits that the only evidence supporting his conviction is Bishop's statements and testimony. Appellant points out that Bishop is a convicted felon who admitted to committing the robbery. Appellant argues that Bishop is attempting to shift the blame for the robbery onto him in an effort to lessen his own culpability.
 {¶ 22} A manifest weight of the evidence challenge contests the believability of the evidence presented. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13. When making the determination as to whether a conviction is or is not against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v.Thomas (1982), 70 Ohio St.2d 79. The issue when reviewing a manifest weight of the evidence challenge is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Nields,93 Ohio St.3d 6, 2001-Ohio-1291, quoting State v. Getsy, 84 Ohio St.3d 180,193-194, 1998-Ohio-533. When reviewing a manifest weight of the evidence challenge, an appellate court sits as the "thirteenth juror." Thompkins,
supra, at 387. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 23} Contrary to appellant's argument, there was evidence admitted at trial supporting Bishop's claims. Benedict saw two men, matching the descriptions of appellant and Bishop, standing across the street when she opened the store. Appellant soon entered and had difficulty paying for a fifty-cent cigar. Less than an hour later, the police recovered $23 from appellant. Pablo Sanchez saw two men run into the backyard and one place a shotgun behind the garage while the other watched. This testimony bolsters the version of events related by Bishop, and not appellant's testimony. Sanchez would have seen a confrontation between Bishop and appellant, during which Bishop held the gun to appellant. Sanchez described both men running into the yard together. Appellant claimed he wanted to call the police to report the robbery. Although he had a number of chances to either call the police or tell the police about the robbery, he failed to do so. The jury may have taken into account that Bishop's story was consistent from the time of his arrest through trial, while appellant's version of events changed at times.
 {¶ 24} Appellant is raising a credibility argument. Credibility primarily is for the fact finder to determine. The jury was presented with Bishop and appellant's testimony. We cannot say the jury lost its way in convicting appellant of complicity to commit aggravated robbery so as to create a manifest miscarriage of justice. Appellant's second assignment of error is overruled. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL and CYNTHIA WESTCOTT RICE, JJ., concur.